Valerie I. ANDERSON, Respondent
Below, Appellant,

v.

STATE of Delaware, Petitioner
Below, Appellee.

No. 711, 2010.

Supreme Court of Delaware.

Submitted: April 20, 2011.
Decided: May 24, 2011.

Santino Ceccotti, Esquire, Office of the Public Defender, Wilmington, Delaware; for Appellant.

Paul R. Wallace (argued) and Elizabeth A. Powers, Esquires, Department of Justice, Wilmington, Delaware; for Appellee.

Before HOLLAND, JACOBS, and RIDGELY, Justices.

JACOBS, Justice:

The State of Delaware, as petitioner-below appellee, filed an habitual driving offender petition in the Court of Common Pleas against the respondent-below appellant, Valerie I. Anderson ("Anderson"), under Chapter 28 of Title 21 of the Delaware Motor Vehicle Code.[1] Hours after declaring Anderson an habitual driving offender, the Court of Common Pleas, *sua sponte*, vacated its earlier judgment, holding that the State's exercise of prosecutorial discretion in Anderson's case was inconsistent with the State's prosecution of other habitual driving offender petitions heard that same day. On appeal, the Superior Court reversed the Court of Common Pleas' decision as an abuse of discretion, and reinstated the judgment declaring Anderson an habitual driving offender. We agree with the Superior Court that the Court of

---

1. 21 *Del. C.* § 2801 *et seq.*

Common Pleas erred in vacating its earlier order declaring Anderson an habitual driving offender, and therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 7, 2006, the State petitioned the Court of Common Pleas for an order declaring Anderson an habitual driving offender under 21 *Del. C.* § 2802.[2] Although the Delaware Division of Motor Vehicles ("DMV") had recommended Anderson to the Attorney General for prosecution on three previous occasions,[3] the December 7, 2006 petition was the first time the State had filed an habitual driving offender petition against her.

At a hearing on the petition held on October 26, 2007, the Court of Common Pleas granted the State's request for a four-month continuance to allow Anderson to secure counsel.[4] The court rescheduled the hearing for February 29, 2008. At the rescheduled hearing, the Deputy Attorney General ("DAG") prosecuting Anderson's case withdrew the petition "after review of [the] petition and record." Withdrawal of the petition made Anderson eligible to reinstate her driver's license, which she did in April 2009.

Thereafter, the State received a fourth recommendation from the DMV, and filed a second habitual driving offender petition

against Anderson on August 10, 2009. On September 25, 2009, the Court of Common Pleas conducted a hearing on the State's second petition. At that hearing, Anderson did not dispute the three convictions that formed the basis for that petition, nor did she dispute that her driving record qualified her as an habitual driving offender. Rather, she argued that revoking her driving privileges would create a hardship, because she was responsible for picking up her grandchildren from school and, moreover, she worked three days a week. The court noted that it understood the hardship that might be created, but stated that it "really [did not] have a choice" since the General Assembly "provided [no] discretion . . . as to whether it is or is not fair." Accordingly, the trial court granted the State's petition and declared Anderson an habitual driving offender under 21 *Del. C.* § 2807.[5]

That same morning, the trial court heard several other habitual driving offender petitions the State had prosecuted against other drivers. In one of those proceedings, the State requested a six-month continuance, which the trial court granted. Immediately thereafter, the trial judge called the DAG to a sidebar conference, and the following conversation ensued:

---

**2.** 21 *Del. C.* § 2802 (defining "habitual offender").

**3.** The DMV also submitted Anderson's name to the Attorney General's office on March 5, 2003, June 14, 2004, and October 29, 2004.

**4.** As the State explained, it frequently offers respondents four-month or six-month continuances in habitual driving offender petition proceedings. A four-month continuance is used to allow an unrepresented respondent to secure counsel. The State offers a six-month continuance, commonly referred to as a "standard continuance," to give a first-time

respondent an opportunity to demonstrate good behavior in exchange for the State withdrawing its petition at the rescheduled hearing date.

**5.** 21 *Del. C.* § 2807 ("If the Court finds that the person is the same person named in the abstract and that the person is an habitual offender, the Court shall by appropriate judgment direct that such person not drive or operate a motor vehicle on the highways of this State and to surrender to the Court all licenses or permits to operate a motor vehicle upon the highways of this State.").

**THE COURT:** So the lady with the three kids and a job, and the grandkids; you couldn't do that for her?

**DAG:** No.

**THE COURT:** What's the difference?

**DAG:** Because we did it once for her.

**THE COURT:** Oh, you already did it once.

**DAG:** That's correct. The thing was submitted.

**THE COURT:** Got it.

After the conclusion of the habitual driving offender calendar, the trial court conducted, *sua sponte*, its own review of Anderson's driving record and compared it to the records of the other drivers offered a six-month continuance by the State that same day. The Court of Common Pleas found that it could not distinguish Anderson's driving record "from other persons who were offered the opportunity to continue the hearing for six (6) months to avoid new traffic charges...." [6] Accordingly, that court vacated its earlier judgment declaring Anderson an habitual driving offender, on the ground that "justice demands fairness, including a consistent application of prosecutorial discretion ... [but] the exercise of [that] prosecutorial judgment as to [Anderson] was not consistent...." [7]

Thereafter, the State next moved the Court of Common Pleas to vacate its September 25, 2009 order and reinstate the judgment declaring Anderson as an habitual driving offender. The court denied

that motion, for two reasons. That court first determined that the DAG had made "inaccurate representations" at the September 25, 2009 hearing, because the State had not offered Anderson a "standard" six-month continuance when it prosecuted its 2006 habitual driving offender petition against her. [8] Therefore, the DAG's explanation—that the State did not offer Anderson a continuance in the 2009 petition because "we did it once for her"— constituted a misrepresentation. [9]

The Court of Common Pleas then concluded that it had the "express and inherent" judicial authority to vacate its own order declaring Anderson an habitual driving offender. [10] The court held that the DAG's statement constituted a "misrepresentation" within the meaning of Court of Common Pleas Civil Rule 60(b)(3), and provided the necessary legal basis for vacating its earlier judgment under Rule 60(b). [11] The court also determined that the interests of justice required the exercise of its inherent power to vacate its earlier order *sua sponte*, because it was "patently unfair for the [State] to offer 'standard' [six-month] continuances to other respondents whose drivers' records were worse than Anderson's record," [12] such "that [the State's] exercise of prosecutorial judgment as to Anderson violated principles of justice." [13]

On appeal, the Superior Court held that the Court of Common Pleas had abused its discretion by vacating its order declaring Anderson an habitual driving offender. [14]

---

6. Order Vacating Declaration of Habitual Offender (Del.Ct.Com.Pl. Sept. 25, 2009).

7. *Id.*

8. *State v. Anderson,* 2010 WL 1006558, at *4 (Del.Ct.Com.Pl. Feb. 26, 2010) (*"Anderson I "*).

9. *See id.* at *4–5.

10. *Id.* at *4.

11. *See id.* at *4–5.

12. *Id.* at *4

13. *Id.*

14. *State v. Anderson,* 2010 WL 4513029 (Del.Super.Ct. Nov. 1, 2010) (*"Anderson II "*).

Finding that the trial court had "misinterpreted the interaction between prosecutorial and judicial discretion," [15] the Superior Court explained that "Delaware courts' deference in reviewing prosecutorial enforcement decisions extends to decisions regarding whom to prosecute as an habitual driving offender and how such prosecutions proceed," and that those prosecutorial decisions are "not subject to judicial oversight unless they violate equal protection or due process principles." [16] The Superior Court determined that the Court of Common Pleas also had "exceeded the scope of its inherent and express authority," [17] because neither the "interests of justice" nor the "misrepresentation" exceptions of Rule 60(b) were implicated by the facts of this case.[18] Anderson appeals from that Superior Court ruling.

### ANALYSIS

On appeal, Anderson claims that the Superior Court erred by reversing the Court of Common Pleas' order vacating its judgment. She first argues that the Court of Common Pleas properly exercised its authority to vacate her habitual driving offender status, because that was done to correct "an unfair application and enforcement" of the habitual driving offender statute. Anderson also contends that the Court of Common Pleas, having relied on the State's "calculated misrepresentations," had the authority to vacate its previous order under Court of Common Pleas Civil Rules 11 and 60(b)(3).

 This Court's review of the Court of Common Pleas' decision mirrors that of the Superior Court.[19] We independently review the Court of Common Pleas' determination for "whether there is legal error, whether the trial court's factual findings are sufficiently supported by the record, and whether those findings are the product of an orderly and logical reasoning process." [20] We review *de novo* the Court of Common Pleas' formulation and application of legal principles,[21] but will not overturn the trial court's factual findings unless those findings are "clearly wrong." [22]

### I. There Was No "Wrong" Requiring A Remedy

#### A. Anderson's Argument

 Anderson first claims that the Superior Court erred in finding that the State has discretion under Section 2804 of the habitual driving offender statute to decide whether or not to bring an habitual driving offender petition against a respondent.[23] She argues that the statutory language "[t]he Attorney General, upon receiving the abstract from the [DMV], *shall* forthwith file a petition ..." requires the State to institute a petition every time the DMV makes a recommendation.[24] Because the State did not obey that mandate,

---

15. *Id.* at *4.

16. *Id.* at *5 (internal quotation marks omitted).

17. *Id.* at *4.

18. *Id.* at *7–11.

19. *Hicklin v. Onyx Acceptance Corp.*, 970 A.2d 244, 248 (Del.2009).

20. *Id.; see also State v. Cagle*, 332 A.2d 140, 142–43 (Del.1974).

21. *Reddy v. MBKS Co., Ltd.*, 945 A.2d 1080, 1085 (Del.2008) (establishing standard of review for a trial court's formulation and application of legal principles).

22. *Cagle*, 332 A.2d at 143.

23. 21 *Del. C.* § 2804.

24. *Id.* (emphasis added).

but instead exercised its prosecutorial discretion in determining which petitions to bring, the Court of Common Pleas had the inherent power to vacate her adjudicated habitual driving offender status to remedy "an unfair application and enforcement" of Section 2804.

Anderson's claim rests on an incorrect premise, namely, that the State's exercise of its prosecutorial discretion constituted a "wrong" that required a judicial remedy. Article III, Section 17 of the Delaware Constitution provides that it is the role of the executive to "take care that the laws be faithfully executed."[25] Thus, "[t]he decision as to which crimes and criminals to prosecute is entrusted ... not to the judiciary, but to the executive who is charged with seeing that laws are enforced."[26] The Attorney General's Office is given broad discretion when deciding against whom to focus its limited prosecutorial resources,[27] and a strong "presumption of regularity supports ... [its] prosecutorial decisions."[28] Consequently, the judiciary must give deference to a prosecutor's exercise of charging discretion, unless that exercise violates equal protection or due process principles.[29] Anderson has not claimed that the State's exercise of prosecutorial discretion violated equal protection or due process principles. Therefore, our inquiry ends here.[30]

Notwithstanding Anderson's contrary claim, there is no requirement that the State prosecute each and every violation of the law. Such a requirement would ignore the "reality resulting from limited law enforcement and judicial resources."[31] That the Attorney General has chosen not to file an habitual driving offender petition in every instance does not give the Court of Common Pleas the power to deny the State's habitual driving offender petition against any specific person, such as Anderson.[32] The habitual driving offender

25. DEL. CONST. art. III, § 17.

26. *United States v. Smith*, 231 F.3d 800, 807 (11th Cir.2000) (citing U.S. CONST. art. II, § 3, which provides that "he shall take Care that the Laws be faithfully executed"). *See also Albury v. State*, 551 A.2d 53, 61–62 (Del.1988) (recognizing that the Delaware Attorney General's Office is responsible for prosecuting criminal actions).

27. *Albury*, 551 A.2d at 61 ("In our criminal justice system, the State has broad discretion as to whom to prosecute.").

28. *United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (citations and quotation marks omitted); *see also* DAVID L. FINGER & LOUIS J. FINGER, DEL. TRIAL HANDBOOK § 10:3 at n. 36 (discussing the presumption of propriety of prosecutorial charging decisions and citing Delaware cases).

29. *Albury*, 551 A.2d at 61 n. 13; *see also Armstrong*, 517 U.S. at 463–64, 116 S.Ct. 1480. Once a valid habitual driving offender

petition is brought, however, the State cannot withdraw that petition without leave of court, except in the limited circumstances provided in Court of Common Pleas Civil Rule 41. *See* DEL. CT. COM. PL. CIV. R. 41.

30. *Armstrong*, 517 U.S. at 463, 116 S.Ct. 1480 (noting that a defendant has a "demanding" burden when seeking to establish that he is being selectively prosecuted in an unconstitutional manner); *see also Albury*, 551 A.2d at 61 n. 13.

31. *Smith*, 231 F.3d at 807 ("The reality resulting from limited law enforcement and judicial resources is that not every criminal violation of the United States Code can be prosecuted.").

32. *Sandra Anderson v. State*, 2010 WL 3103400, at *1 (Del.Super.Ct. June 3, 2010) ("While [it] may be troubling [that the Attorney General does not bring a petition every time it receives a DMV driving record], [that] does not form a basis for denying the petition in another case. That is because the Attorney General's charging decisions are only subject

statute recognizes only two circumstances authorizing the denial of a petition: (1) if the trial court finds that the respondent is not the person identified in the certified DMV driving record, or (2) if the trial court finds that the respondent was not actually convicted of a predicate offense listed in the certified DMV driving record.[33] Neither circumstance was argued to the Court of Common Pleas. Thus, the Court of Common Pleas had no legal basis to conclude that Anderson was not an habitual driving offender, where, as here, the statutory requirements for habitual driving offender status had all been established.

## B. *The Court of Common Pleas' Decision*

■ In vacating Anderson's status as an habitual driving offender, the Court of Common Pleas concluded that it had properly exercised its authority to remedy what it had found to be a "patently unfair" exercise of prosecutorial discretion.[34] The "wrong," the trial court found, was that the State did not offer Anderson a "standard" six-month continuance to improve her driving record as was done for other drivers similarly situated.[35] To remedy

that wrong, the trial court vacated its previous order declaring Anderson an habitual driving offender.

■ In finding that the State's refusal to offer a continuance to Anderson constituted a legal "wrong," the Court of Common Pleas erred. The State is not required to request a continuance in each and every habitual driving offender prosecution.[36] Nor did the State, in fact, request a continuance in each and every habitual driving offender case presented the same day Anderson's petition was heard. It is well-recognized that the State's decision to offer, agree to, or reject a continuance involves the exercise of prosecutorial discretion.[37]

■ To be sure, where the State does request a continuance, it is within the trial judge's discretion to grant or deny that request.[38] A trial court may also offer a continuance *sua sponte*, although neither party is required to accept the court's offer.[39] Thus, if the Court of Common Pleas believed that Anderson was wronged because the State did not offer her the continuance it had offered to other respondents, the court could have remedied any

to judicial review for due process and equal protection violations.").

33. 21 *Del. C.* § 2807; *see also State v. Kamalski,* 429 A.2d 1315 (Del.Super.Ct.1981).

34. *Anderson I,* 2010 WL 1006558, at *4 (Del. Ct.Com.Pl. Feb. 26, 2010).

35. *Id.*

36. *See Ward v. State,* 414 A.2d 499, 500 (Del. 1980) (noting that the State has "broad discretion in law enforcement" and "is not obliged to treat two similarly situated defendants alike.").

37. *See, e.g., Commonwealth v. Leatherbury,* 499 Pa. 450, 453 A.2d 957, 959 (1982) (O'Brien, C.J., dissenting) ("The [prosecution's] decision to request a third continuance rather than proceed with the preliminary hearing was, by the [prosecution's] own ad-

mission, an exercise of prosecutorial discretion.").

38. *Secrest v. State,* 679 A.2d 58, 64 (Del.1996) (commenting that whether to deny or grant a request for a continuance is at the "discretion of a trial judge whose ruling will not be disturbed on appeal unless that ruling is clearly unreasonable or capricious." (internal quotation marks and citation omitted)).

39. *See, e.g., Massaro v. United States,* 538 U.S. 500, 502, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003) (noting that "defense counsel more than once declined the trial court's offer of a continuance" to further examine evidence); *In re Heller,* 669 A.2d 25, 32 (Del.1995) (finding that respondent had refused to accept a court-offered continuance); *Cline v. Prowler Indus. of Md., Inc.,* 418 A.2d 968, 983 (Del. 1980) (observing that plaintiff had refused to accept the trial court's offer to order a continuance).

perceived "wrong" by making its own offer to continue the case.

The Court of Common Pleas did not do that, however. Instead, it vacated its earlier judgment declaring Anderson an habitual driving offender, thereby effectively dismissing the State's petition against Anderson. That dismissal remedy bore no logical relationship to the supposed procedural wrong (*i.e.*, no continuance being offered).[40] A court cannot impose a remedy that bears no relation to the wrong it seeks to redress.[41] As the United States Supreme Court has explained, "remedies should be tailored to the injury suffered from the . . . violation and should not unnecessarily infringe on competing interests."[42] Here, no logical relationship existed between the remedy (effectively denying the State's petition) and the supposed wrong (the State's decision not to offer Anderson a continuance).

## II. There Was No Misrepresentation.

### A. *Application of Rule 60(b)*

We also uphold the Superior Court's conclusion that the Court of Common Pleas erroneously relied on Court of Common Pleas Civil Rules 60(b)(3) and 60(b)(6) as a basis to remedy the State's "misrepresentation."[43] Rule 60(b) pertinently provides that:

> On motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party . . . or (6) any other reason justifying relief from the operation of the judgment.[44]

### 1. *Rule 60(b)(3).*

"A Rule 60(b)(3) motion is reserved for situations where a party has engaged in fraud or misrepresentation that prevents the moving party from fairly and adequately presenting his or her case."[45] To obtain relief under that Rule, the moving party "bears a heavy burden" of showing "the most egregious conduct involving a corruption of the judicial process it-

**40.** *See, e.g., Folks v. Scott*, 1998 WL 781846, at *4 (Del.Ch. Oct. 8, 1998) (noting that for the court to grant injunctive relief, a plaintiff "must show a logical relationship (a "nexus")" between the alleged wrong and the requested remedy); *id.* at *4 n. 11 (citing cases). *See also United States v. Van Engel*, 15 F.3d 623, 631 (7th Cir.1993) ("A federal judge is not authorized to punish the misconduct of a prosecutor by letting the defendant walk, unless the misconduct not only violated the defendant's rights but also prejudiced his defense . . . ." (citing *United States v. Morrison*, 449 U.S. 361, 365, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981) and *United States v. Payner*, 447 U.S. 727, 742 n. 9, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980))).

**41.** *See, e.g., Van Engel*, 15 F.3d at 632 (concluding that "a remedy which consists of striking counts from [defendant's] indictment bears very little relation to the wrong" of

governmental misconduct, where that misconduct did not infringe upon the defendant's rights).

**42.** *Morrison*, 449 U.S. at 364, 101 S.Ct. 665 (addressing remedies to Sixth Amendment violations); *see also Tillery v. Owens*, 907 F.2d 418, 429 (3d Cir.1990) (noting that in prison and desegregation cases, "the nature of the remedy is to be determined by the nature and scope of the constitutional violation and thus must be related to 'the condition' alleged to offend the Constitution." (internal quotation marks, citations, and emphasis omitted)).

**43.** *See Anderson II*, 2010 WL 4513029, at *7–11 (Del.Super.Ct. Nov. 1, 2010).

**44.** Del Ct. Com. Pl. Civ. R. 60(b)(3), (b)(6).

**45.** *MCA, Inc. v. Matsushita Elec. Indus. Co.*, 785 A.2d 625, 639 (Del.2001).

self." [46]

The transcript of the September 25, 2009 hearing does not support the Court of Common Pleas' finding that the State engaged in "egregious conduct" constituting a "misrepresentation" under Rule 60(b)(3). At most, the colloquy between the trial judge and the DAG involved an unfortunate misunderstanding. The trial judge likely thought that her questions to the DAG were clear, but the record shows that the subject she had in mind—"a six-month continuance"—was never explicitly verbalized in their conversation. Rather, the trial judge asked the DAG (non-specifically), "So the lady with the three kids and a job, and the grandkids; you couldn't do *that* for her?" To which the DAG responded (with equal non-specificity), "No.... Because we did *it* once for her.... The *thing* was submitted."

Taking in context the pronouns "that" and "it" and the generic noun "thing," it becomes apparent that the DAG believed the trial judge was asking him why the State could not show Anderson leniency (because of the hardship it would cause), and offer her a chance to avoid revocation of her driver's license upon a showing of good behavior. That belief is evidenced by the DAG's response "[b]ecause we did it once for her" and "[t]he thing was submitted." What the DAG meant was that Anderson had previously been offered a four-month continuance when the State brought its first petition against her, after which the first petition was withdrawn.

To the extent the DAG and the trial judge were "on different wavelengths," the

DAG's response could not have constituted a misrepresentation within the meaning of Rule 60(b)(3). Nothing in the record supports the conclusion that the DAG intended to mislead the Court of Common Pleas or acted in bad faith. Because there was no misrepresentation, no basis existed for the trial court to vacate its earlier order declaring Anderson as an habitual driving offender under Rule 60(b)(3).

### 2. *Rule 60(b)(6).*

Nor does Rule 60(b)(6) support the Court of Common Pleas' order vacating its earlier determination that Anderson was an habitual driving offender. For a court to grant relief under Rule 60(b)(6), there must be a showing of "extraordinary circumstances." [47] If such extraordinary circumstances are shown, the court may vacate a judgment "[where] such action is appropriate to accomplish justice." [48]

The facts of this case did not constitute "extraordinary circumstances." Anderson does not contest the substantive validity of the State's petition, nor does she dispute the three predicate motor vehicle convictions on which that petition was based. The State's exercise of prosecutorial discretion here was proper, legally and factually. Legally, Anderson has not challenged that exercise of discretion on equal protection or due process grounds. Factually, although the trial court independently found that Anderson's driving record was "indistinguishable" from that of other habitual driving offenders on the calendar that day, the record does not support that finding.[49] Nothing in the record supports

**46.** *Id.* (quotation marks and citation omitted).

**47.** *Jewell v. Div. of Soc. Servs.,* 401 A.2d 88, 90 (Del.1979).

**48.** *Id.* (quoting *Klapprott v. United States,* 335 U.S. 601, 615, 69 S.Ct. 384, 93 L.Ed. 266 (1949)).

**49.** *See Anderson II,* 2010 WL 4513029, at *11 n. 66 (Del.Super.Ct. Nov. 1, 2010) (identifying factual inaccuracies in the trial court's analysis).

the trial court's application of Rule 60(b)(6) in the circumstances presented here.

## B. *Application of Court of Common Pleas Civil Rule 11*

 Finally, Anderson claims that the trial court had authority under Court of Common Pleas Civil Rule 11 to vacate its earlier order as a sanction for the State's misrepresentation. This claim also lacks merit.

Rule 11 pertinently provides that:

the sanction may consist of or include, directives of a nonmonetary nature, an order to pay a penalty into Court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation.[50]

Nothing in Rule 11 suggests that the trial court may vacate an earlier order, thereby resulting in a dismissal of the proceeding, as a sanction for a party's alleged violation of that Rule.[51]

Rule 11 sanctions are appropriate to deter and punish the bringing of frivolous or meritless claims.[52] Those circumstances were not implicated here. Anderson does not dispute that all the statutory requirements of the habitual driving offender statute were satisfied. Nor does she claim that by filing its petition against her, the State engaged in abusive litigation or misuse of the court's process.[53] Thus, no basis existed to impose a Rule 11 sanction.

## CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is affirmed.

---

50. Del. Ct. Com. Pl. Civ. R. 11(c).

51. Under the Federal Rules of Civil Procedure Rule 11, sanctions that are imposed by the court's initiative (as opposed to a motion by a party) are limited to monetary penalties payable to the court. *See* 5A Wright & Miller, Fed. Prac. & Pro. Civ. § 1336.3 (3d ed.) (describing types of Rule 11 sanctions). *See also Drejka v. Hitchens Tire Serv., Inc.*, 15 A.3d 1221, 1224 (Del.2010) (concluding that the trial court's exclusion of plaintiff's expert witness, which effectively operated as a dismissal, was not an appropriate sanction for violation of a discovery scheduling order).

52. *In re Appeal of Infotechnology, Inc.*, 582 A.2d 215, 221 (Del.1990); *see also Shahin v. Del–One Del. Fed. Credit Union*, 950 A.2d 659 (Table), 2008 WL 2332951, at *1 n. 4 (Del. 2008) (citing *Barker v. Huang*, 610 A.2d 1341, 1345 (Del.1992)).

53. *See Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir.1994) ("We have emphasized that Rule 11 targets abuse, making sanctions appropriate only if the filing of the complaint constituted abusive litigation or misuse of the court's process." (internal quotation marks and citation omitted)).