# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CURTIS J. BROWN, | ) | |
| | ) | |
| Appellant/Defendant Below, | ) | |
| | ) | |
| V. | ) | Case ID: 1502004036 |
| | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Appellee/Plaintiff Below, | ) | |

Submitted: September 9, 2016
Decided: January 9, 2017

*Upon Consideration of
Appellant's Appeal of Decision
of the Court of Common Pleas,* **AFFIRMED.**

**MEMORANDUM OPINION**

Albert M. Greto, Esquire, Law Offices of Albert M. Greto, Wilmington, Delaware. Attorney for Appellant.

Matthew C. Bloom, Esquire, Department of Justice, Wilmington, Delaware. Attorney for Appellee.

**BUTLER, J.**

## FACTUAL BACKGROUND AND PROCEDURAL POSTURE

On or about February 7, 2015, Curtis Brown ("Appellant") was arrested for Driving Under the Influence of Alcohol ("DUI") and driving at an unreasonable speed. Corporal Richard Angelucci, while driving his marked patrol vehicle on Route 1 in New Castle County at approximately 1:30am, observed a black Audi approaching his vehicle from behind at a high rate of speed. Despite the officer traveling above the 65-mile-per-hour speed limit, the Audi was still able to catch up to Corporal Angelucci.

Corporal Angelucci stopped the Audi. Appellant was in the driver's seat. Appelant had had trouble collecting his license, registration and insurance card. His eyes were watery and glassy, his speech slow and slurred. He had a moderate odor of alcohol. Corporal Angelucci asked Appellant to step out of the vehicle and Appellant complied although accompanied by some struggles with his balance.

Corporal Angelucci administered, and Appellant failed, three field sobriety tests. On the horizontal gaze nystagmus test, Appellant exhibited all six clues indicating a 77% likelihood of impairment. On the Walk and Turn test, Appellant exhibited five of eight clues indicating a 68% likelihood of impairment. On the One-Leg-Stand, Brown exhibited three clues, indicating a 65% likelihood of impairment. Corporal Angelucci placed Appellant under arrest at the conclusion of these tests under the belief that Appellant was under the influence of alcohol.

1

Appellant's case proceeded to a bench trial in the Court of Common Pleas on July 8, 2015. Corporal Angelucci testified as the sole witness for the State. While the trial court expressed concern over the State's lack of audio in the police cruiser to accompany the video entered into evidence by the State, the court found the testimony of Corporal Angelucci to be credible and that he provided sufficient explanation for all the scientific data of the standard field sobriety tests he administered.

At the conclusion of evidence, the trial judge found Appellant guilty of both the DUI charge and driving at an unreasonable speed. The court delayed sentencing to allow the State to produce a certified copy of the Appellant's Pennsylvania records, showing a 2011 enrollment in Pennsylvania's Accelerated Rehabilitative Disposition ("ARD") program, a DUI diversionary program. The trial court held a hearing on this matter on October 27, 2015, at which point the court held that Appellant's ARD participation constituted a prior DUI offense under 21 Del. C. § 4177B(e)(1) and granted the State's application to sentence Brown as a second DUI offender pursuant to 21 Del. C. § 4177(d)(2). The trial court found that the Delaware and Pennsylvania DUI statutes generally, and the Delaware FOP Statute and Pennsylvania ARD Statutes, as well as their diversionary programs, are substantially similar.

Appellant subsequently filed a motion for reargument on February 26, 2016 which the trial court denied. Appellant raised concerns within the motion regarding lack of notice and Sixth Amendment issues. Although not properly before the court, in the interest of justice, the trial court addressed them briefly in turn. Appellant argued that he was never placed on notice that his participation in the Pennsylvania ARD Program would constitute a "prior offense" for future DUI prosecutions, and that the Sixth Amendment of the United States Constitution prevented the State from using his participation in the Pennsylvania ARD Program as a predicate "prior offense" for sentencing purposes.

As to notice, the trial court found that neither the Delaware FOP Statute or the Pennsylvania ARD Statute require a defendant to be notified of potential sentencing consequences when electing to participate in the programs. With respect to Appellant's Sixth Amendment concerns, the trial court found that the Delaware Supreme Court had already rejected Appellant's argument in both *Talley v. State*[1] and *State v. Laboy*[2]. In *Laboy*, the Court held that in order for the defendant to be sentenced as a repeat offender, the State "only needed to establish that he had twice been convicted, pled guilty, or participated in a DUI course or

---

[1] 2003 WL 23104202, at *2 (Del. 2003).

[2] 117 A.3d 562 (Del. 2015).

3

rehabilitation under § 4177 of 'a similar statute of any state,'" and the court found certified court records to be sufficient to meet that burden.[3]

On Appeal, there are two questions before the Court. First, did sufficient evidence exist for the trial court to convict Appellant of DUI? Secondly, can participation in the Pennsylvania ARD be considered a "prior offense" pursuant to 21 Del. C. § 4177B(e)(1), regardless of notice to the defendant?

## STANDARD OF REVIEW

This Court reviews appeals from the Court of Common Pleas in the same manner as the Supreme Court would consider an appeal.[4] The Court's function is limited to correcting legal error and determining whether the factual findings made by the trial judge are "sufficiently supported by the record and are the product of an orderly and logical deductive process."[5] Errors of law are reviewed *de novo*.[6] Findings of fact are reviewed only to verify that they are supported by substantial evidence.[7]

---

[3] *Id.* at 568.

[4] *Layne v. State*, 2006 WL 3026236, at *1 (Del. Super. Sept. 26, 2006).

[5] *State v. Anderson*, 2010 WL 4513029, at *4 (Del. Super. Nov. 1, 2010).

[6] *State v. Godwin*, 2007 WL 2122142, at *2 (Del. Super. July 24, 2007).

[7] *Id.*

4

When the issue on appeal is the sufficiency of evidence to convict, the Court must discern "whether, considering the evidence in the light most favorable to the State, including all reasonable inferences to be drawn there from, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[8] The Court does not distinguish between direct and circumstantial evidence.[9] Factual findings will be overturned only where the record below indicates the trial court's findings are "clearly wrong."[10]

## DISCUSSION

### I. THE EVIDENCE WAS SUFFICIENT TO SUPPORT A CONVICTION

Appellant's first argument may be dispatched in straightforward fashion. The fact finder found him guilty on the evidence presented. All facts that suggested his guilt must be considered in the light most favorable to sustaining the verdict.

Whether the defendant was "drunk"[11] is not particularly relevant. Rather, the State is required to produce sufficient evidence for a reasonable fact finder to

---

[8] *Church v. State*, 2010 WL 5342963, at *1 (Del. Dec. 22, 2010) (citing *Dixon v. State*, 567 A.2d 854, 857 (Del. 1989)).

[9] *Id.*

[10] *Anderson v. State*, 21 A.3d 52, 57 (Del. 2001).

[11] *Lewis v. State*, 626 A.2d 1350, 1355 (Del. 1993).

5

conclude that the defendant's ability to drive safely was impaired by alcohol.[12] The Delaware Supreme Court has held that determining whether this burden has been met is "within the realm of common knowledge."[13] Accordingly, investigative tests, such as chemical or sobriety tests, are not necessary to establish the impairment required by statute.[14] "The State may meet its burden by producing circumstantial evidence of alcohol's influence through the defendant's conduct, demeanor, and statements."[15]

In this case, from the moment Corporal Angelucci made contact with Appellant, Angelucci observed numerous indicators that Appellant was under the influence. Appellant had trouble focusing on the officer, his speech was slow and slurred, and his eyes were watery and glassy. Additionally, Corporal Angelucci was able to detect an odor of alcohol, Appellant fumbled as he collected the documents requested by Corporal, and Corporal testified that Appellant lost his balance and swayed when exiting the vehicle. Once out of the vehicle, Corporal Angelucci administered three field sobriety tests, and Appellant failed all three. In the trial transcript, Corporal Angelucci was found to be "very credible",

---

[12] *Id.*

[13] *Church,* 2010 WL 5342963, at *2.

[14] *Id.*

[15] *Stevens v. State,* 110 A.3d 1264, 1271 (Del. Super. 2015).

"knowledgeable" and "held well under cross-examination." The trial judge characterized Corporal Angelucci's testimony as "unimpeachable."

While Appellant invites us to review all of the evidence, piece by piece, the Court declines.[16] He had an opportunity before a fact finder, who was in far better position to gauge the credibility of the testimony, and the fact finder found proof beyond a reasonable doubt. Barring some untoward evidentiary issue – a complaint not raised here – this Court will not second guess the fact finder's verdict. The fact finder found Appellant guilty, and we see nothing in this record to warrant second guessing that conclusion upon appellate review.[17]

---

[16] For example, defendant urges that while his performance on 3 different field sobriety tests was perhaps less than stellar, the likelihood that he was therefore under the influence was no better than 80%. While that may be true as to a fail on any one test, the statistical probability of failing all three tests but not being under the influence decreases dramatically. So if a fail on the One Legged Stand yields about an 80% likelihood of intoxication, and a fail on the Horizontal Gaze Nystagmus test also indicates an 80% likelihood of intoxication, the resultant likelihood that our suspect is intoxicated does not remain at 80%. Rather, the odds increase by a multiple. And having failed all three, any reference to statistics only reinforces the verdict based on all the evidence.

[17] Appellant also argues that he was entitled to a *Deberry* instruction due to the absence of audio to accompany the video of the traffic stop as a result of a technical malfunction with Corporal Angelucci's MVR. *Deberry v. State*, 457 A.2d 744 (Del. 1983). This Court has already held in *DeLoach v. State* that the Delaware State Police do not have an affirmative duty to video record all driving under the influence investigations. 2012 WL 2948188, at *4 (Del. Super. July 16, 2012). This Court held "a defendant is not entitled to a *Deberry* instruction for a police officer's failure to preserve his field notes taken during a DUI stop." *Id.*

While it should be noted that it was a bench trial, the trial judge *did* give himself a *Deberry* instruction as to the Appellant's statements that were not audio recorded. Appellant was not entitled to the *Deberry* instruction at the trial level, and the fact that the trial judge decided to give the instruction anyway certainly does not mean that Appellant had the right to one. There is no evidence that even suggests bad faith on the part of Corporal Angelucci and we are satisfied that the lack of audio to the MVR video was simply a result of the device malfunctioning.

7

## II.  THE EFFECT OF A PENNSYLVANIA ARD ON A DELAWARE DUI CONVICTION

Appellant's next argument concerns his sentencing as a second DUI offender based on a prior Pennsylvania ARD. First, Appellant contends that he was entitled to notice that participation in the ARD program would constitute a "prior offense." Second, Appellant argues that using the Pennsylvania ARD participation as a "prior offense" violates his Sixth Amendment rights.

### A. Notification of the Potential Consequences of an ARD on Subsequent Convictions Is Not Necessary.

Appellant's first attack on the use of his Pennsylvania ARD is essentially foreclosed by the existing law of this state. The rule was first articulated in *Krewson v. State*, in which the Delaware Supreme Court held that where the defendant is "under no illusion that he has entirely avoided the judicial process with none of its statutorily imposed sanctions, there is clearly no requirement that he be informed of every contingency, including subsequent offenses, which might result in penalty enhancement."[18] Later, in *State v. Carr,* the Delaware Supreme Court held that "we conclude that a conviction for driving under the influence, which occurs as part of a judicial proceeding, is not rendered invalid because the defendant was not given a judicial warning of the subsequent penalties which are

---

[18] 552 A.2d 840 (Del. 1998).

8

triggered by the first conviction. We further rule that a defendant electing to participate in a first offender program, incident to a judicial proceeding, need not be warned of the triggering effect of the first offense on any subsequent conviction for driving under the influence."[19]   These cases make clear that any "notice" argument defendant may have elsewhere, there is no room for such an argument as a matter of Delaware law.[20]

## B. ARD Under Pennsylvania Law is Substantially Similar to Delaware's First Offender's Program

Appellant's second point of attack on his predicate offense is that ARD in Pennsylvania operates somewhat differently from an FOP under Delaware law. Under our DUI laws, a prior FOP election "counts" as a predicate offense even if the defendant successfully completes the requirements of the First Offender's Program and has not suffered a "conviction" for other purposes.  The Code further provides that completion of a program resembling Delaware's FOP in a different state should likewise "count" as a prior conviction for purposes of considering whether the defendant is subject to sentencing as a first or subsequent offender.[21]

So, predictably, Appellant argues that Pennsylvania's ARD provisions are

---

[19] *State v. Carr*, 641 A.2d 833, 834 (Del. 1994).

[20] *See also Scheinert v. Henderson*, 800 F.Supp 263, 267 (E.D. Pa. 1992) (lack of notification that ARD may enhance a future sentence does not deny defendant of due process); *Commonwealth v. Reeb*, 593 A.2d 853 (Pa. Super. Ct. 1991) (notice that ARD may enhance subsequent penalties not required).

[21] 21 Del. C. § 4177B(e)(1).

distinctly different from Delaware's FOP and even though he agrees he completed ARD in Pennsylvania, it should not be counted as a prior conviction for Delaware's enhanced penalty purposes.

States everywhere have enacted DUI first offender laws to give first offenders a legal means to get their alcohol issues under control, obtain treatment and go on with their lives without suffering the collateral burdens of a "conviction." The variety of these experiments is as imaginative as the legislatures that pass them. Delaware recognizes that the states vary by programming and nomenclature and therefore makes no attempt to specifically identify them by name. Instead we are instructed to consider the sister state's program and determine if it is "a similar statute of any state, local jurisdiction, any federal or military reservation or the District of Columbia."[22]

Appellant essentially concedes that ARD is a rehabilitative program offered to offenders charged with DUI in order to avoid a conviction.[23] And he concedes he elected an ARD disposition in 2011. Appellant argues that if one elects an ARD with a BAC between .08 and .10, then ARD is available again should a driver pick up a second DUI within 10 years. Delaware has no comparable provision. But this is truly the proverbial distinction without a difference. The

---

[22] 21 Del. C. § 4177B(e)(1)(d).

[23] *See* 75 Pa. C. S. § 3807.

required instructional/rehabilitative program is *in pari materia* with Delaware's FOP program; indeed, defendant does not argue otherwise. The fact that Pennsylvania allows its drivers a "second bite" sometimes, under the right circumstances, does not change the fundamental character of the "first bite," which is what the "first" offender's program is all about. This argument might be more interesting if the State were pressing for a third offense sentencing after a Pennsylvania driver had two prior trips through Pennsylvania's ARD program, but that is not this case.

Appellant's second attack on "similarity" grounds is that a Delaware FOP failure is met with an adjudication of guilty of the offense charged, while a Pennsylvania ARD failure is met with a return to Court for adjudication.

There are any number of ways for the courts to respond to a failure in a diversionary program. Some courts may accept a "conditional guilty plea" in which the defendant tenders a guilty plea but the Court sets it aside pending successful completion of programming. If the defendant completes successfully, the guilty plea is discarded; if he fails, it is "accepted" and the defendant is sentenced accordingly.[24] A second approach is a "stipulated non-jury trial" in which the defendant admits to all of the facts contained in the police reports and

---

[24] *See* 21 Del. C. § 4177B.

11

waives a jury trial. The diversion court judge accepts all of this but makes no finding unless and until the defendant fails in the diversion programming.[25]

Probably the least efficient approach is to defer any adjudication until there has been a program failure and then require the State to marshal and produce all of its evidence of the defendant's guilt despite its making the ameliorative effects of the deferred adjudication available to him. This is the path chosen by Pennsylvania.[26] So the question becomes: does Pennsylvania's inefficient method for resolving the charge in light of a program fail make its ARD program sufficiently different from Delaware's FOP program to render a prior ARD resolution ineffective as a sentence enhancer under Delaware's DUI law?

We think the answer is clearly no. The essence of a "similar" program is not the procedural consequences of a fail, but the steps required of drivers who succeed in the program. Almost universally, these programs seek to ensure that the driver has suffered some consequence that reinforces the undesirability of the behavior, but more importantly does something affirmative to deal with his alcohol issue. The Pennsylvania ARD program includes some rather elaborate checks on

---

[25] Delaware Superior Court, *A Participant's Guide/Handbook to the Drug Court Diversion Program* (2015), http://courts.delaware.gov/superior/pdf/drug_court_participants_handbook_english_2015.pdf

[26] 75 Pa. C. S. § 3807(e).

12

the severity of the driver's issues that may include inpatient rehab.[27] These are the very issues the General Assembly addressed in its FOP law. Exactly how a state chooses to address the consequences of a failure of the programming is not particularly germane to the purposes for which these deferral programs exist.

### III. THE SIXTH AMENDMENT IS NOT A BAR TO CONSIDERATION OF DEFENDANT'S PRIOR ACCEPTANCE OF ARD.

Appellant saves his most pointed criticism for last, arguing that his Pennsylvania ARD resolution in 2011 cannot be considered a predicate offense because doing so is barred by the Sixth Amendment.

While not exactly a model of clarity, we understand Appellant's argument to be that his ARD participation was used to enhance the penalty imposed and since his ARD resolution was not presented to the fact finder in an adjudicatory proceeding, it runs afoul of the U.S. Supreme Court's jurisprudence in *Apprendi v. New Jersey*[28] and its progeny.

But the biggest hurdle Appellant must overcome for his argument to succeed is *Almendarez-Torres v. United States*.[29] This was a case in which the defendant was prosecuted and convicted for illegal entry into the United States after having

---

[27] 75 Pa. C. S. § 3807(b)(ii)-(iii).

[28] 530 U.S. 466 (2000).

[29] 523 U.S. 224 (1998).

13

been previously deported upon conviction for felonies in the United States. Because of the prior convictions, his sentence was statutorily "aggravated" beyond that called for in a "normal" illegal reentry case. The defense argued that the aggravator (prior felony convictions) should not apply because it had not been found by a jury – or even charged in the indictment by the prosecution.

The United States Supreme Court distinguished the *Apprendi* line of cases when it comes to consideration of a defendant's prior record. Since the aggravated sentence "simply authorizes a court to increase the sentence for a recidivist," it was not an element of an offense and need not be charged in the indictment or proven up to a jury. According to the Court, "the sentencing factor at issue here—recidivism—is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence."[30]

A second consideration bears mention here: if Appellant were correct, that his prior record, be it an ARD, FOP or prior conviction for DUI, which would also enhance his penalty, were constitutionally required to be found by a jury, there is obvious prejudice to the defendant resulting from such disclosures in the midst of the factual findings of his guilt or innocence of the charged offense. As the Court put it, "we do not believe, other things being equal, that Congress would have

---

[30] *Id.* at 243.

14

wanted to create this kind of unfairness in respect to facts that are almost never contested."[31]

So while there is indeed a tantalizing argument to be made that defendant's ARD resolution must be submitted to a jury, the argument is refuted when the "prior conviction" merely structures the penalty in a way it would not otherwise have been structured. In such cases, *Almendarez-Torres* takes the prior record out of the jury's fact finding function and, consequently, the *Apprendi* "rights" guaranteed by the Sixth Amendment.

The remaining argument Appellant makes is that even if his prior record is not subject to a jury finding, his ARD is not a "conviction" and it is only "convictions" that a Court may consider in the absence of a jury finding; a Court may not "find" a "prior" ARD. This argument is simply illogical. First, Appellant conceded the existence of the prior ARD in 2011 in Pennsylvania. There is no question but that he underwent this process. Second, the State produced certified records that were not impeached. Third, as a matter of Pennsylvania law, it is the acceptance of ARD that triggers its "counting" for enhanced sentencing for subsequent DUI convictions.[32] If the defendant accepted ARD, it matters not how

---

[31] *Id.* at 235.

[32] *See Commonwealth v. William Love,* 957 A.2d 765 (Pa. Super. 2008) (trial court properly considered defendant's acceptance of ARD for his first DUI violation as a prior offense occurring within statutory ten-year look-back period of defendant's second DUI violation,

15

he performed in the program, it all "counts" as a prior for subsequent offense purposes.

Finally, recalling our earlier discussion about the variety of ways states work out the consequences of a driver's failure to complete his diversion programming, some result in virtually automatic convictions, some in only potential convictions. In fact, in Pennsylvania, an ARD "counts" as a prior "conviction" even if the driver fails out of the ARD program, is brought back to court and is acquitted of the underlying DUI.[33] It is the acceptance of the diversionary process that triggers the enhanced penalty, not the conviction in the event of failure.

Frankly, given Appellant's somewhat sprawling arguments, we are not sure if we have covered them in sufficient detail, so we will add this. Appellant goes on about ARD not being a "conviction" and that *Apprendi* and *Almarendaz-Torres* limits a Court's non-jury findings to prior convictions, not these "off brand" resolutions that do not result in convictions. We think the answer is that defendant places too much weight on the term "conviction." 21 Del. C. § 4177B(d) includes not only out of state convictions, but also "a conditional adjudication of guilt, any court order, or any agreement sanctioned by a court requiring or permitting a person to apply for, enroll in or otherwise accept first offender treatment or any

notwithstanding that ARD acceptance was later revoked and the second violation occurred before defendant was sentenced for first offense).

[33] *See Com. v. Bowers*, 25 A.3d 349 (Pa. Super. 2011).

16

other diversionary program…" as well as "participation in a course of instruction or program of rehabilitation or education pursuant to § 4175(b) of this title, § 4177 of this title or this section, or a similar statute of any state, local jurisdiction, any federal or military reservation or the District of Columbia, regardless of the existence or validity of any accompanying attendant plea or adjudication of guilt."

So, as a matter of statutory construction, the Court has no doubt but that Appellant's ARD and course of treatment moves Appellant into the category of repeat offender under the Delaware Code. His further protestations that the Sixth Amendment or *Apprendi* prohibit consideration of the ARD disposition fail as a matter of law and must be rejected.

Judgment Affirmed.

**IT IS SO ORDERED**.

Judge Charles E. Butler

17