**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

RAYMOND DAVID KIEFER,    )
LESLIE CARPANI KIEFER     )
                           )
        Appellants,     )
      v.               )    C.A. No.: N25A-02-005 SSA
                           )
UKSP, LLC,          )
                           )
        Appellee.     )

Submitted: August 22, 2025
Decided: September 3, 2025

**<u>MEMORANDUM OPINION</u>**

This matter was tried as a bench trial in the Court of Common Pleas. At the time of trial, Appellants were represented by counsel. Appellants received an unfavorable verdict. The Judgment was Ordered on March 7, 2024. On July 1, 2024, Appellants' counsel filed a Motion to Withdraw, which was thereafter granted.

The Court of Common Pleas issued an Amended Order on July 15, 2024, which included attorney's fees. The next day, Appellants filed a *pro se* Motion to Vacate Judgment and Dismiss case. The Court of Common Pleas analyzed the *pro se* filing as a Motion pursuant to Court of Common Pleas Rule 60(b) and denied it on January 15, 2025. A Notice of Appeal was filed with this Court on February 13, 2025.

***Trial Below***

The case began with the agreement to purchase two buildings located at 2204 and 2206 Monroe Street in Wilmington, as rental properties. An agreement of sale was entered on September 26, 2018. However, the sale did not go through closing, and each party blamed the other. Appellants alleged fraud. Appellee advanced the theory that buyers got cold feet the morning of settlement.

Appellee filed suit in the Justice of the Peace Court to retain the $5,000 security deposit. Appellants countersued. Appellants, in part, sought damages which included the lost benefit of a deferral on capital gains tax related to the sale of a rental property in New Jersey. The case was then removed to the Court of Common Pleas for trial on the merits.

Appellants argued at trial that, by failing to advise that eviction notices were filed on the properties, Appellee engaged in fraud. Appellant Raymond David Kiefer (hereinafter "Mr. Kiefer") testified at trial as to his belief that fraud took place.[1] However, he also testified that, despite finding out about the alleged fraud, he still planned to close on the property.[2] He changed his mind the morning of settlement.[3]

---

[1] Trial transcript p. 171.
[2] *Id.*
[3] *Id.*

The contract itself had two contingencies—related to financing and pest inspection.[4] The overall home inspection was waived.[5] The parties negotiated other aspects of the contract, but did not include a requirement related to the provision of tenant ledgers.[6] Some tenants received a subsidy on rent through the Delaware State Housing Authority ("DSHA"). Appellee testified DSHA requires the landlord to file a civil action if the tenant does not make payment on their portion of the rent.[7]

Mr. Kiefer testified had no prior experience owning this type of rental property.[8] Mr. Kiefer asked for tenant ledgers—*after* he signed the contract.[9] Mr. Kiefer admitted he was told of problems by Appellee with some tenants paying rent, prior to his decision to execute the agreement of sale.[10] Over objection from Appellee, the Trial Court permitted testimony regarding Appellants' taxes. This testimony went to Appellants' claim of damages, resultant from their inability, because of the failed deal on the Monroe Street properties, to take advantage of a tax deferral under federal law. Mr. Kiefer was permitted to testify regarding the tax returns.

---

[4]Trial transcript. at 36.
[5] *Id.* at 37.
[6] *Id.* at 36-38.
[7] *Id.* at 47-48.
[8] *Id.* at 214.
[9] Trial transcript p. 210-211.
[10] Trial transcript p. 215-217.

The Trial Court did not find fraud or any other reason for Appellants to have withdrawn under the contract. The Trial Court noted in its ruling that the Multiple Listing Service includes a disclaimer. In its oral ruling at the conclusion of trial, the Trial Court noted that Mr. Kiefer did not ask for specific tenant information until after he signed the contract.[11] "There's no evidence before me that there was any provision within the contract itself that was signed by the parties that would allow Mr. Kiefer to back out of it."[12] In sum, the Trial Court found Appellants were unable to point to any contractual provision in the agreement of sale that required the disclosure of non-payment of rent by tenants.

***Rule 60(b) Decision***

The Trial Court considered the post-trial Motion filed by Appellants and decided as follows:

> The Court finds that the Kiefer's did not allege any extraordinary circumstances that would constitute justifying relief under Rule 60(b)(6). Despite considering the equitable principles of fairness, the Kiefer's did not allege any factors that would warrant vacating the final judgment in this case. Here, the Kiefers [sic] simply re-hashed the facts and same arguments already presented and litigated during trial. The only "new evidence" the Kiefers provided does not appear relevant nor would have changed the outcome of the case. As the Court stated in its ruling from the bench following trial, the evidence presented at trial established the [sic] upon finally viewing the property in question, the Kiefer's (more specifically, both Mr. and Mrs. Kiefer) then decided not

---

[11] Trial transcript p. 258.
[12] Trial transcript p. 260.

to purchase the building in question and breached the purchase agreement. Thus, the Court finds that relief under Rule 60(b)(6) is not warranted.

### Proceedings in this Court

Appellee filed a Motion to Dismiss the Appeal, pointing out that Appellants failed to file a transcript, thus making it "impossible for this Court to even analyze if there was an abuse of discretion." Recognizing Appellants are now proceeding *pro se*,[13] this Court held a hearing and denied the motion to dismiss, without prejudice. Appellants were instructed to file a transcript for the Court to review. A trial transcript has been filed. The parties were also given leave to make supplemental filings on the merits to ensure that all arguments would be fairly presented to the Court. Part of the Court's purpose in scheduling an in-person hearing was to ensure Appellants were aware that in proceeding *pro se*, they would still be required to follow the Court's rules. "There is no different set of rules for *pro se* plaintiffs, and the trial court should not sacrifice the orderly and efficient administration of justice to accommodate an unrepresented plaintiff."[14]

### Scope of this Appeal

The Court notes an issue regarding time to clarify the subject of this Appeal. "[A]ppeals shall be taken within 30 days of the final order, ruling, decision or

---

[13] *Tolliver v. Delaware Futures, Inc.,* 2020 WL 6588496 (Del. Super.).
[14] *Draper v. Medical Center of Delaware,* 767 A,2d 796 (Del. 2001).

judgment."[15]  The statute does not give this Court discretion on the length of time. Given the timing of the filings in this case, this Appeal can only be considered based on the ruling of the Trial Court pursuant to Rule 60(b).

***Standard of Review for Appeals from the Court of Common Pleas***

This Court "has an obligation to correct errors of law and to review findings of fact 'to determine if they are sufficiently supported by the record and are the product of an orderly and logical deductive process.'"[16]  Legal questions undergo *de novo* review, while factual questions are subject to a "clearly erroneous" standard.[17] Finally, and relevant for the scope of this appeal, "the decision to relieve a party from a final judgment or order is reviewed under an abuse of discretion standard."[18]

Court of Common Pleas Rule 60(b) governs Relief from judgment or order and provides, in pertinent part, as follows:

> Mistake; inadvertence; excusable neglect; newly discovered evidence; fraud, etc. On motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior

---

[15] 10 Del. C. § 1326.
[16] *State v. Anderson,* 2010 WL 4513029 (Del. Super.) *quoting J.S. F. Props., LLC v. McCann,* 2009 WL 1163494 at *1 (Del. Super.) *quoting Disabatino v. State,* 808 A.2d 1216, 1220 (Del. Super. 2022).
[17] *Id.*
[18] *Id.*

judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. A motion under this subdivision does not affect the finality of a judgment or suspend its operation.

In *Anderson,* the Supreme Court clarified two of the subsections pursuant to Rule 60 which provide some guidance for this Court. Specifically, 60(b)(3) "is reserved for situations where a party has engaged in fraud or misrepresentation that prevents the moving party from fairly and adequately presenting his or her case."[19] The same decision clarified that 60(b)(6) is designed to address "extraordinary circumstances."[20] Rule 60(b) does not provide litigants a second bite from the apple.[21]

### *Appellant's Arguments*

In reviewing the filings in this case, at times Appellants appears to be clear this appeal relates to the Rule 60 motion.[22] However, at other times, Appellants' arguments conflate their belief that fraud took place in their initial contractual dispute with Appellee, with the Rule 60(b) standard. Rule 60(b) provides a limited avenue for redress but does not provide an avenue to redo.

---

[19] *Anderson v. State*, 21 A.3d 52 (Del. 2011).
[20] *Id.*
[21] *SARN SD3, LLC v. Czechoslovak Group A.S.,* 2023 WL 3145917 (Del. Super.).
[22] See Notice of Appeal p. 1.

The lack of clarity about the about the scope of this Appeal is revealed in Appellants filing dated August 22, 2025, which includes a copy of the trial transcript. This transcript appears to include Appellants' subjective thoughts about the proceedings. Therein, Appellants injects commentary that testimony is "hilarious," "fraud," and that statements from witnesses and counsel are "perjury." Additionally, Appellants took filings from opposing counsel and provided similar commentary.

Appellants also identified the use of generative artificial intelligence in their pleadings. It is understandable that a *pro se* litigant would seek out available technology to assist in their own representation. But the use of generative artificial intelligence in this manner was entirely unhelpful to the Court because the queries themselves were inherently biased.[23]

Clearly Appellants feel strongly about these proceedings. The Court has endeavored to permit the parties to fully-develop their arguments and has reviewed the record carefully. Nevertheless, this is not an appeal of the trial. Appellants' subjective thoughts about the veracity of testimony by witnesses or the arguments of Trial Counsel are unhelpful to the Court. Courts require proof, not speculation.

---

[23] For example, Appellant's filing on August 22, 2025 includes the following statements: "I asked ChaptGPT5 – 'When attorneys lie in court, can the judge be charged with abuse of discretion?" p. 11. "I asked ChatGPT5: 'What if a Judge at a bench trial makes his decision based on false testimony and evidence?" p. 15. "I asked ChaptGPT5: 'Analyze this Trial Transcript for evidence of a Kangaroo Court." p. 21.

Appellants' filings in this matter are laden with arguments that are, in fact, arguments challenging the verdict. By way of further example, the Notice of Appeal states the "Judge refused to acknowledge the "but-for" fact that the Seller Fraudulently Misrepresented the Rental Occupancy and Subsequent Revenue…."

Later, Appellants again does not address Rule 60 but instead seek to argue the merits of trial:

> [t]he Judge dismisses the fact that Material Evidence and Witnesses were suppressed by both the Plaintiff and Defense Council [sic]. One Example is that during discovery, the Seller refused to comply with the Defense request for a Ledger, through which the Seller stated that it 'was proprietary.'[24]

Appellants misunderstand. This evidence was not suppressed at trial—the Trial Court heard testimony from Mr. Kiefer regarding his request for these documents, after he signed the contract, but Appellee did not provide them because he was not required to under the contract. Discovery relates to the Court rules regulating the exchange of information for preparation of trial.

As explained, the purpose of this Appeal is to determine whether the Court of Common Pleas abused its discretion when it denied Appellants' Rule 60(b) application. To do that, this Court has reviewed the trial transcript and the record. Upon careful review, this Court shall interpret Appellants' argument regarding "Coincidental Case" to be an allegation of fraud under Rule 60(b). The argument

---

[24] Notice of Appeal p. 2.

related to fraud is reiterated in Appellants' reply brief— "Abuse of Process to conceal Fraudulent Misrepresentation." As stated above, relief pursuant to Rule 60(b) is limited to fraud that prevented the parties from fairly and adequately presenting their case at trial.

Appellants argue that a JP Court Order in litigation involving Appellee with an unrelated party, related to the same property, was fraud under Rule 60(b). However, there are several problems with this argument. First, the Court Order is a public record and there is no evidence that it was fraudulently concealed or, as will be discussed below, that the contents of the JP Court Order suggest fraud on behalf of Appellee. Moreover, a Court Order from an entirely unrelated litigation would not have been admissible at Appellant's trial under the Delaware Rules of Evidence.[25] Finally, what Appellants proffer in their brief to be a copy of the JP Court's decision[26] does not give this Court cause to believe Appellee engaged in fraud in that unrelated litigation. The information pasted within Appellants' brief before this Court identifies Appellee here as the Defendant in that unrelated litigation, and the Magistrate appears to have made the following finding:

---

[25] See D.R.E. 404 (a)(1); D.R.E. 403.
[26] This Court was not supplied with a Certified copy of the JP Court's Order.

"[T]he Court does not find Plaintiffs argument that Defendant's lack of requesting information prior to settlement is a breach of the contract…Defendant did not breach the contract by refusing to go forward with settlement….Finally, the Court is not persuaded by Plaintiffs argument…"[27]

Finally, Appellants' brief suggests this information was known the Appellants trial counsel at the time of trial.[28] Accepting this representation as true, it is evidence that such information was known to Appellants at the time of trial. It is likely that trial counsel assessed the information as not legally relevant or admissible. Indeed, this evidence harms Appellants position as the Magistrate found Appellee did not breach that contract either.

In their most-recent filing with this Court, Appellants argues the Trial Court erred because it did not explain how to remedy the Rule 60(b) motion, filed *pro se*.[29] *Platsky* is a federal decision where the Court criticized the dismissal of a *pro se* pleading on technicalities.[30] In this case, the Rule 60(b) motion was not dismissed on a technicality, it was dismissed because Appellants did not allege sufficient *new* facts that constitute the "extraordinary circumstances" required.

In this same filing, Appellants asserts the Addendum to the Agreement of Sale, introduced as a Joint exhibit, was "False Evidence." Evidence that did not

---

[27] Appellant's Opening Brief at p. 15.
[28] "Mr. Brady's final comment to me after the bench trial was "He's (Mr. Pandit) done this before."
[29] See Appellant's August 22, 2025 filing at p. 14.
[30] *Platsky v. CIA*, 953 F.2d 26, 28 (2d Cir. 1991).

support Appellants position at trial is not, by itself, "false." Appellant provides no proof that the exhibit was false. Instead, Appellant pivots and reargues his trial position and concludes, summarily, that Federal Wire Fraud was committed. This argument is without merit.

Next Appellants argue an "obstruction of justice" because Appellants themselves failed to subpoena or call witnesses at trial.[31] The failure to present testimony or witnesses known, or who should have been known, to Appellants at the time of trial is not an error of the Trial Court. Indeed, later,[32] Appellants argue it was error on the part of the Trial Court because Appellants failed to produce tax returns in discovery, which yielded an objection. This is not error on the part of the Trial Court. In fact, the Trial Court permitted testimony regarding those documents. These arguments are without merit.

The remaining arguments set forth in Appellants' latest filing are all inappropriate for an appeal of the Rule 60(b) motion. The Rule 60(b) Motion was not an opportunity for a retrial.[33] Appellants have not presented any evidence that qualifies under Rule 60(b), instead, Appellants filings in this Court are an attempt to relitigate the trial itself. This Court finds no abuse of discretion in the decision of the Court of Common Pleas in denying Appellants Rule 60(b) petition.

---

[31] August 22, 2025 filing by Appellants at p. 17-19.
[32] Id. at p. 22.
[33] *See MCA, Inc. v. Matsushita Elec. Indus. Co., Ltd*, 785 A.2d 625, 633-634 (Del. 2001).

**NOW, THEREFORE,** this 3rd day of September 2025, the judgment of the Court of Common Pleas is AFFIRMED.

**IT IS SO ORDERED**.


<u>**/s/Sonia Augusthy**</u>
Judge Sonia Augusthy