# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TRIUMPH MORTGAGE CORP.,<br>a Delaware corporation, | )<br>)<br>) | |
| Plaintiff, | )<br>) | C.A. No. N16L-11-058 VLM |
| v. | )<br>)<br>) | |
| GLASGOW CITGO, INC.,<br>a Delaware corporation, successor by<br>name change to GLASGOW GETTY,<br>INC. | )<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

## MEMORANDUM OPINION

Submitted: January 23, 2018
Decided: April 19, 2018

*Upon Consideration of Plaintiff's Motion to Disqualify Defendant's Counsel &
Extend Case Schedule*, **DENIED**.

*Upon Consideration of Plaintiff's Motion for Summary Judgment – Defendant's
Lack of Counsel*, **DENIED**.

*Upon Consideration of Plaintiff's Motion for Summary Judgment*, **DENIED**.

Richard L. Abbott, Esquire of Abbott Law Firm, of Wilmington, Delaware. *Attorney
for Plaintiff.*

William D. Sullivan, Esquire of Sullivan Hazeltine Allinson LLC, of Wilmington,
Delaware. *Attorney for the Defendant.*

**MEDINILLA, J.**

## INTRODUCTION

Plaintiff Triumph Mortgage Corp. ("Plaintiff") filed a *Sci. Fa. Sur* Mortgage complaint after Defendant Glasgow Citgo, Inc. ("Defendant") defaulted on a mortgage created as part of a 2002 refinancing transaction ("Refinancing Transaction") between the parties. Defendant alleges several affirmative defenses to prevent foreclosure on the encumbered property.

Plaintiff moves to disqualify Defendant's counsel and for summary judgment under Superior Court Civil Rule 56 based on allegations that Defendant does not have the authority to retain counsel, and that Defendant lacks any viable affirmative defenses.[1] After consideration of the parties' briefings and oral arguments, for the reasons stated below, Plaintiff Triumph Mortgage Corp.'s Motion to Disqualify Counsel & Extend Case Schedule and Motion for Summary Judgment – Defendant's Lack of Counsel are **DENIED**. Additionally, Plaintiff's Motion for Summary Judgment is **DENIED.**

## FACTUAL AND PROCEDURAL HISTORY

This is a commercial mortgage foreclosure action, initiated pursuant to the filing of a *Sci. Fa. Sur* Mortgage Complaint. The mortgage at issue encumbers property located at 2964 Pulaski Highway (the "Property") on which Defendant

---

[1] Pl.'s Mot. for Summ. J. at ¶¶ 12–19. Plaintiff's Motion for Summary Judgment only addresses the affirmative defenses asserted in the Answer, not the additional affirmative defenses asserted by Defendant in the First Amended Answer. However, the Court considers Plaintiff's arguments made at the hearing concerning the additional affirmative defenses.

2

operated a gas station and convenience store. The mortgage is the product of the Refinancing Transaction between the parties. Plaintiff Triumph is a corporation wholly-owned by Ralph Estep ("Estep"), while Defendant Glasgow Citgo was majority-owned by the late Robert Galvin.[2] Estep was Robert Galvin's accountant and one-time business partner.

On January 17, 2002, the parties set up the Refinancing Transaction, which Defendant alleges was to pay off two existing loans with the Wilmington Trust Company. However, the terms of the Refinancing Transaction refinanced other unsecured loans that Estep had made to Robert Galvin and resulted in Defendant receiving funds upwards of $100,000 with which to conduct business.[3] Defendant alleges that the Wilmington Trust Company loans were removed from the transaction on the eve of settlement, based on side negotiations between Estep and the Wilmington Trust Company.[4] Defendant alleges that Estep failed to get adequate consent for the revised transaction.

Robert Galvin died six months after the Refinancing Transaction closed, in July of 2002. The transaction's obligations were inherited by his wife, Kathy Galvin

---

[2] Estep has an existing 20% ownership in Defendant Glasgow Citgo. *See* Def.'s Resp. to Pl.'s Mot. for Summ. J. [hereinafter Def.'s Resp.] at ¶ 9, Ex. 4 at ¶ 3.

[3] *See* Pl.'s Mot. for Summ. J., Ex. C.

[4] Def.'s Resp. at ¶¶ 2–5.

("Galvin"). However, in the intervening years, Galvin has not filed an accounting on her husband's estate.[5] Defendant became a void Delaware corporation effective March 1, 2004, for failure to file the necessary annual reports and/or pay taxes.[6] Subsequently, Defendant first defaulted on the mortgage when it failed to timely pay off the remaining principal balance due under the loan by a January 17, 2007 deadline. Thereafter, Defendant was in default on the mortgage for failure to pay the default interest rate and due to cessation of payments in March of 2009.

In both Motions for Summary Judgment and in seeking to disqualify defense counsel, Plaintiff claims that it exercised its rights under an agreement ("Pledge Agreement") also dated January 17, 2002, which provided additional collateral for the loan at issue.[7] This Pledge Agreement allegedly authorizes Plaintiff to take over Defendant's uncertificated stockholdings by operation of law and to vote the stock.

---

[5] Plaintiff petitioned the Court of Chancery to remove Galvin as executrix in October of 2017. At a hearing on October 26, 2017, the Court of Chancery gave Galvin a sixty-day deadline to file an accounting. *See* Ltr. from Defense counsel dated Jan. 10, 2018 & attached transcript of Oct. 26, 2017 Rule to Show Cause Hearing before the Hon. Morgan T. Zurn (Transaction #61553479). Galvin was unable to meet the deadline and Plaintiff petitioned the Register of Wills to remove Galvin as executrix of the estate, which was done on January 5, 2018. *See* Ltr. from Plaintiff counsel dated Jan. 9, 2018 (Transaction #61544339). However, a representative from the Register of Wills presented before this Court during oral arguments on January 18, 2018 to confirm that Galvin had been reinstated as executrix pending any further action in the Court of Chancery. To the Court's knowledge, no further action has been taken in the Court of Chancery.

[6] Pl.'s Mot. for Summ. J., Ex. A.

[7] *Id.*, Ex. G.

4

Plaintiff alleges that this corporate takeover of Defendant by Plaintiff/Estep took place on November 22, 2017, and entitles Plaintiff to judgment as a matter of law.

Plaintiff thus filed (1) the Motion to Disqualify Defendant's Counsel & Extend Case Schedule; (2) the Motion for Summary Judgment – Defendant's Lack of Counsel, and (3) the Motion for Summary Judgment on December 15, 2017. Defendant responded to Plaintiff's Motion to Disqualify Defendant's Counsel & Extend Case Schedule on January 8, 2018. Defendant responded to both Plaintiff's motions on January 12, 2018. A hearing was held on January 18, 2018. Both sides provided supplemental correspondence to the Court interspersed between the briefs and following the hearing between January 19–23, 2018. This Court granted a separate, yet related, filing on Defendant's Motion to Compel additional discovery on April 3, 2018. Having considered all submissions, the matter is now ripe for review.

## PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL & EXTEND CASE SCHEDULE

### *Standard of Review*

Motions to disqualify are brought for violations of the Delaware Rules of Professional Conduct ("DRPC") where the challenged conduct allegedly prejudices the proceedings.[8] "[T]he burden of proof must be on the non-client litigant to prove

---

[8] *Dollar Tree, Inc. v. Dollar Express LLC*, 2017 WL 5624298, at *5 (Del. Ch. Nov. 21, 2017). The Delaware Supreme Court made it clear in *In re Appeal of Infotechnology, Inc.* that *"[u]nless*

5

by clear and convincing evidence (1) the existence of a conflict and (2) to demonstrate how the conflict will prejudice the fairness of the proceedings."[9]   For all types of conflicts, the Court reviewing the motion "must weigh the effect of any alleged conflict on the fairness and integrity of the proceedings before disqualifying the challenged counsel."[10]

Further, motions to disqualify are highly disfavored due to the recognized potential for abuse.  As such, the disciplinary rules were previously amended in order "to narrow the circumstances under which counsel will be disqualified.  The concern was that, under the prior provisions, 'motions to disqualify [were] often disguised attempts to divest opposing parties of their counsel of choice.'"[11]   Due to the

---

*the challenged conduct prejudices the fairness of the proceedings, such that it adversely affects the fair and efficient administration of justice,* only [the Supreme Court] has the power and responsibility to govern the Bar, and in pursuance of that authority to enforce the Rules for disciplinary purposes." *In re Appeal of Infotechnology, Inc.*, 582 A.2d 215, 216–17 (Del. 1990) (emphasis added).

[9] *In re Appeal of Infotechnology*, 582 A.2d at 221.  *See also Matter of Estate of Waters*, 647 A.2d 1091, 1095 (Del. 1994); *McLeod v. McLeod*, 2014 WL 7474337, at *2 (Del. Super. Ct. Dec. 20, 2014); Postorivo *v. AG Paintball Holdings, Inc.*, 2008 WL 3876199, at *13 (Del. Ch. Aug. 20, 2008).

[10] *Harper v. Beacon Air, Inc.*, 2017 WL 838224, at *3 (Del. Super. Ct. Mar. 2, 2017) (quoting *Sanchez-Caza v. Estate of Whetstone*, 2004 WL 2087922, at *4 (Del. Super. Ct. Sept. 16, 2004)).

[11] *McLeod*, 2014 WL 7474337, at *2.

potential for abuse, courts have recognized this as an "extreme remedy that should be employed only when necessary to ensure the fairness of the litigation process."[12]

### Discussion

Plaintiff does not allege that defense counsel is a necessary witness or that a conflict exists. Rather, Plaintiff moves to disqualify counsel on the basis that Galvin did not have the authority to retain counsel after Estep/Plaintiff took control of Defendant and terminated defense counsel's legal services.[13] Plaintiff asserts that when Triumph exercised its rights under the Pledge Agreement, it purportedly "took control of the stock and/or exercised its voting rights as to elect Estep as the sole Director of Glasgow [Citgo]. In turn, Estep, acting as sole Director of Glasgow, elected himself as the President and Secretary of [Defendant] Glasgow."[14] Plaintiff's counsel wrote to defense counsel detailing the alleged corporate takeover and requested that defense counsel withdraw immediately as he had been discharged

---

[12] *Harper*, 2017 WL 838224, at *1, *7 (quoting *Fernandez v. St. Francis Hosp., Inc.*, 2009 WL 2393713, at *5 (Del. Super. Aug. 3, 2009)). *See also, e.g., Jackson v. Rohm & Haas Co.*, 366 Fed. Appx. 342, 347 (3d Cir. 2010) (describing disqualification as an "extreme remedy").

[13] Plaintiff makes several arguments disputing Galvin's corporate control and standing in this matter, including that: (1) Galvin lacks the appropriate authority to assert ownership or control over Defendant when she failed to probate her husband's estate, and (2) Galvin would only exercise control over Defendant's stock in her capacity as executrix, not as beneficiary to the residuary estate because her husband's will only contemplated giving her the right to sell the Defendant entity, not to obtain corporate control. Further, Plaintiff argues that Galvin has not established corporate control of Defendant through any executed, legally valid documents.

[14] Pl.'s Mot. to Disqualify Defendant's Counsel at ¶ 13.

7

as counsel through its new President, Estep.[15]  Since defense counsel declined to withdraw, Plaintiff argues he must be disqualified.  This Court disagrees.

Plaintiff does not allege any violations that fit within the provisions of DRPC under DRPC Rules 1.7, 1.9, or 3.7.  This appears to be something of an entirely different character, and Plaintiff fails to show by clear and convincing evidence that an alleged conflict exits or the existence of any prejudice in the fairness of the proceedings.  Although Plaintiff attaches correspondence detailing an alleged corporate takeover of Defendant through the exercise of Plaintiff's alleged rights under the Pledge Agreement, this does not form the proper basis for disqualification.[16]  The Court does not have jurisdiction to determine matters of corporate control and cannot engage in such an analysis.[17]

Therefore, Plaintiff's Motion to Disqualify Defendant's counsel is **DENIED.**

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – DEFENDANT'S LACK OF COUNSEL

### *Standard of Review*

Superior Court Civil Rule 56 mandates the granting of summary judgment upon a showing that "there is no genuine issue as to any material fact and that the

---

[15] *Id.*, Ex. G.

[16] The factual record is even more unclear because the corporate kit apparently went missing when it was transferred from one law firm to another sometime after 2004.

[17] *See* 10 *Del. C.* §§ 341–42.

8

moving party is entitled to judgment as a matter of law."[18] Summary judgment will not be granted if there is a material fact in dispute or if "it seems desirable to inquire thoroughly into [the facts] in order to clarify the application of the law to the circumstances."[19] In considering the motion, "[a]ll facts and reasonable inferences must be considered in a light most favorable to the non-moving party."[20] However, courts should not "indulge in speculation and conjecture; a motion for summary judgment is decided on the record presented and not on evidence potentially possible."[21]

## *Discussion*

Plaintiff seeks summary judgment by dovetailing this relief with the motion for disqualification. It argues that where the corporate takeover gave Estep the authority to terminate his opposing counsel, Defendant was left without valid legal representation, and this entitles Plaintiff to default judgment pursuant to Rule 55(b)(2).[22] Although it is well established that an artificial entity such as Defendant

---

[18] DEL. SUPER. CT. CIV. R. 56(c).

[19] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962), *rev'd in part and aff'd in part*, 208 A.2d 495 (Del. 1965).

[20] *Nutt v. A.C. & S. Co., Inc.*, 517 A.2d 690, 692 (Del. Super. 1986).

[21] *In re Asbestos Litig.*, 509 A.2d 1116, 1118 (Del. Super. 1986) *aff'd sub nom. Nicolet, Inc. v. Nutt*, 525 A.2d 146 (Del. 1987).

[22] Rule 55(b)(2) concerns default judgment by the Court. Rule 55(b)(2) states that "[i]n all other cases, the party entitled to a judgment by default shall apply to the Court. . . ."

9

Glasgow Citgo may not prosecute litigation unless it is represented by Delaware legal counsel,[23] as noted, Plaintiff did not meet its burden of showing that defense counsel's ouster was legal and binding on Defendant. Since the determination of corporate control is exclusively within the jurisdiction of the Court of Chancery[24] and this Motion for Summary Judgment is wholly predicated upon whether Plaintiff/Estep had the right to terminate Defendant's legal representative, Plaintiff's first Motion for Summary Judgment – Defendant's Lack of Counsel is therefore **DENIED**.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### *Discussion*

Plaintiff also seeks judgment as a matter of law under Rule 56 arguing that because of Defendant's void corporate status, Defendant lacks capacity to interpose any affirmative claims and lacks standing to defend against this foreclosure claim.[25] In addition, Plaintiff argues that none of Defendant's asserted affirmative defenses

---

[23] *Transpolymer Industries, Inc. v. Chapel Main Corp.*, 1990 WL 168276 (Del. Sept. 18, 1990); *Pazuniak Law Office, LLC v. Pi-Net Int'l, Inc.*, 2016 WL 3916293, *2 (Del. Super Ct. June 30, 2016).

[24] *See* 10 *Del. C.* §§ 341–42.

[25] Pl.'s Mot. for Summ. J. at ¶¶ 1–5.

10

are valid: the defenses are either legally barred or factually disproven by the record, entitling Plaintiff to summary judgment.[26]

With all reasonable inferences drawn in favor of Defendant, given the twists and turns presented in this factual record, there exist genuine issues of material fact regarding the viability of the corporation and who exercised control of Defendant that should be properly addressed in the Court of Chancery. Further, since the Court granted Defendant's Motion to Compel additional discovery after these motions were filed—and the additional discovery may serve to inform the Court regarding the applicability of available defenses *solely as to the mortgage foreclosure action*, the Court does not consider the viability of any affirmative defenses at this stage of the proceedings. Where Defendant raises affirmative defenses that ultimately go to the issue of corporate control, they must be raised in the Court of Chancery. Thus, the Court cannot grant summary judgment on the issues of corporate status or viable affirmative defenses.

## CONCLUSION

Plaintiff seeks determinations as a matter of law regarding Defendant's corporate status and control that cannot be addressed in this Court nor through Superior Court Civil Rule 56. These are within the exclusive jurisdiction of the

---

[26] *Id.* at ¶ 12.

11

Court of Chancery. If the issue of corporate control remains at the core of this litigation, this matter must be stayed until these determinations are properly made in the Court of Chancery. However, if Plaintiff decides that Galvin is the proper representative, and there is no dispute regarding corporate control of Defendant, then the matter will continue in this Court.

For the reasons previously stated, Plaintiff's Motion to Disqualify Counsel & Extend Case Schedule, Plaintiff's Motion for Summary Judgment – Defendant's Lack of Counsel, and Plaintiff's Motion for Summary Judgment are **DENIED**. Plaintiff is instructed to notify the Court of its intent to seek relief in the Court of Chancery within twenty days of this ruling.

**IT IS SO ORDERED.**

_____
Judge Vivian L. Medinilla

oc:   Prothonotary
cc:   All Counsel on Record (via e-filing)

12