IN THE SUPREME COURT OF THE STATE OF DELAWARE

THOMAS L. HUNT, ESQUIRE, §
§ No. 233, 2020
Appellant, §
§ Court Below – Court of Chancery
v. §
§ C.A. No. 2018-0553
COURT OF CHANCERY OF THE §
STATE OF DELAWARE, §
§
Appellee. §

Submitted: April 7, 2021
Decided: June 10, 2021

Before **SEITZ**, Chief Justice; **VALIHURA**, **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices, constituting the Court *en Banc*.

*PER CURIAM*:

## ORDER

This 10th day of June, 2021, having considered the briefs and the record below, and following oral argument, it appears to the Court that:

(1)     In litigation before the Court of Chancery, Thomas L. Hunt, Esquire, a Texas attorney admitted *pro hac vice*, sent an unprofessional email to opposing counsel.  The email's recipient brought it to the Court of Chancery's attention and requested that Hunt's *pro hac vice* privileges be revoked.  During a teleconference with the court addressing an unrelated motion, the Court of Chancery decided not to revoke Hunt's *pro hac vice* admission.  But the court on its own initiative imposed on Hunt almost $15,000 in sanctions, which represented the attorneys' fees incurred

by counsel in bringing the email to the attention of the court and seeking sanctions. The court concluded that Hunt's email was prejudicial to the administration of justice in violation of Delaware Lawyers' Rule of Professional Conduct 8.4(d).

(2)     On appeal, Hunt argues that he was denied due process when the Court of Chancery imposed monetary sanctions without giving him notice that the court was considering monetary sanctions or an opportunity to respond.  Hunt also claims that his email to opposing counsel did not prejudice the administration of justice, meaning that any disciplinary sanction is within this Court's exclusive jurisdiction.

(3)     Although we understand fully why the court did not want to give Hunt a pass for his uncivil email, we reverse the Court of Chancery's judgment.  Due process required that Hunt be given notice and an opportunity to be heard before imposing a monetary sanction for a disciplinary infraction.  And Hunt's email, while completely inappropriate, did not rise to the level of a serious threat of violence prejudicial to the administration of justice.  Absent conduct that is prejudicial to the administration of justice, this Court has exclusive jurisdiction to address violations of Delaware lawyer disciplinary rules.

<u>Background Facts</u>

(4)     Hunt is a Texas attorney admitted *pro hac vice* to represent defendants Bruce P. Eames, Andrey Omeltchenko, AVG Holdings, LP, and Aster Securities (US) LP in a Court of Chancery action brought by plaintiffs Quantlab Group GP,

2

LLC, Veloce LP, and Marco, LP.[1]  The case involved a declaratory judgment action against the defendants regarding the validity and interpretation of amendments to a partnership agreement.  The Court of Chancery ruled in favor of the plaintiffs.  This Court affirmed the Court of Chancery's judgment.[2]

(5)     On April 21, 2020, the Court of Chancery heard oral argument on the plaintiffs' post-judgment Motion to Enforce Final Order and Judgment.  Following argument, Hunt sent an April 27, 2020 letter to the court to keep the court "apprised of the proceedings in the Texas Fraud case" and to "correct a misstatement made by [the] [p]laintiffs during the April 21, 2020 hearing."[3]  The plaintiffs' attorney responded with a May 8, 2020 letter to the court accusing Hunt of making misrepresentations to the court.[4]

(6)     The plaintiffs' counsel followed up with another letter to the Court of Chancery on May 12, 2020, complaining that "[a] little more than an hour after [the May 8, 2020 letter], the undersigned received an email from Mr. Hunt . . . ."[5]  The email read:

> [Counsel]- just got your last letter.  Like most pusillanimous slanderers, you apparently feel cloaked in the safety of distance to launch a prevaricator's baseless ad hominem attack on me.  As with most of the fabrications you foist on the court, your spew is at best specious if not

---

[1] C.A. No. 2018-0553.  Quantlab Group LP was separately represented as a nominal defendant.
[2] *Eames v. Quantlab Grp. GP, LLC*, 222 A.3d 580, 2019 WL 5681414 (Del. 2019) (TABLE).
[3] App. to Opening Br. at A80 (May 8, 2020 Letter to the Vice Chancellor) (referring to, and quoting from, the defendants' April 27, 2020 letter).
[4] *Id.* at A80–85.
[5] *Id.* at A87 (May 12, 2020 Letter to the Vice Chancellor).

just plain bogus. I look forward to meeting you face to face, if your bladder can handle it.[6]

(7) In the May 12, 2020 letter the plaintiffs' attorney requested that the court revoke Hunt's *pro hac vice* admission and impose unspecified "other sanctions."[7] The plaintiffs' counsel argued that, in addition to the misrepresentations in his earlier letter to the court, Hunt's conduct "implicates Rules 1.1 (Competence), 3.1 (Meritorious claims and contentions), 3.3(a) (Candor toward the tribunal) and 8.4 (Misconduct) of the Delaware Lawyers' Rules of Professional Conduct."[8]

(8) On May 13, 2020, Delaware counsel for the defendants responded to the May 12, 2020 letter, apologizing to the court on behalf of Hunt for the email and acknowledging that "it never should have been sent."[9] Delaware counsel also argued that the email "has no effect on the pending motion and it does not compare to the sanctionable conduct described in [the] [p]laintiffs' cited authorities."[10]

(9) On June 11, 2020, the Court of Chancery held a teleconference and ruled on the plaintiffs' Motion to Enforce Final Order and Judgment. At the end of its ruling denying the motion, the court turned to Hunt's email. It found that his email was prejudicial to the administration of justice in violation of Delaware

---

[6] App. to Opening Br. at A94 (Ex. A to May 12, 2020 Letter to the Vice Chancellor).
[7] *Id.* at A91 (May 12, 2020 Letter to the Vice Chancellor).
[8] *Id.*
[9] *Id.* at A100 (May 13, 2020 Letter to the Vice Chancellor).
[10] *Id.* at A103.

Lawyers' Rule of Professional Conduct 8.4(d).[11]  The court declined, however, to revoke Hunt's *pro hac vice* admission.  The court stated that, "while troubling, . . . . Hunt has apologized, and his outburst appears to be an isolated incident."[12]  The court also found that, although a severe transgression of the ethical rules, it was an "isolated instance of unprofessional conduct" and "disqualification, revocation, and, for that matter, a report to disciplinary counsel" were not justified.[13]  Instead, the court ordered that "Hunt, not his clients, will pay the counsel fees incurred by . . . [the] May 12 letter . . . ."[14]  The fees totaled $14,989.00.[15]  Due to the press of other matters, the court could not entertain questions regarding its sanctions ruling, but invited the parties to "direct those questions to me in writing to the extent you have them."[16]  That ended the proceedings in the Court of Chancery.

(10)  Hunt has appealed the Court of Chancery's order sanctioning him almost $15,000 for sending the email.  Although the plaintiffs and their counsel had notice of the appeal and an opportunity to participate as parties, they have not joined the appeal—presumably because they no longer want to incur the time and expense.

---

[11] Opening Br. Ex. A at 29.
[12] *Id.* at 30.
[13] *Id*. at 31.
[14] *Id*. at 30.
[15] Opening Br. Ex. B at 2.
[16] Opening Br. Ex. A at 31.

To allow this Court to have an adversarial presentation of the issues, the Delaware Department of Justice has defended the court's sanctions order.[17]

(11) "[I]n exercising our sole and exclusive jurisdiction over matters affecting governance of the Bar, our review is *de novo* when addressing legal issues of the type raised here."[18] "We review decisions to impose sanctions for an abuse of discretion."[19]

<u>Procedural Issues</u>

(12) We address two procedural issues before reaching the merits—whether Hunt's appeal should be dismissed for failure to join an indispensable party, and whether the Court of Chancery is the proper party to this appeal. The argument goes that the plaintiffs have a substantial interest—and the only pecuniary interest—in this appeal. Without party status, the plaintiffs will suffer prejudice if the Court overturns the attorneys' fees award. Likewise, the Court of Chancery, as an independent and impartial judicial body, is supposedly an improper party because it has no interest in the appeal and was simply the decision-making authority for the plaintiffs' sanctions request.

---

[17] *See Evans v. Justice of the Peace Court No. 19*, 652 A.2d 574, 578 (Del. 1995) ("The Justice of the Peace Court is an instrumentality of the State of Delaware. The Delaware Department of Justice has properly recognized that it must represent the institutional interests of that tribunal in [this] litigation.") (citing 29 *Del. C.* § 2504(3)).
[18] *In re Appeal of Infotechnology, Inc.*, 582 A.2d 215, 218 (Del. 1990).
[19] *Crumplar v. Superior Ct. ex rel. New Castle Cty.*, 56 A.3d 1000, 1005 (Del. 2012).

(13) We decline to dismiss this appeal on procedural grounds. Except in appeals where jurisdiction is in question, our Court "de-emphasizes the technical procedural aspects of appeals and stresses the importance of reaching and deciding the substantive merits of appeals whenever possible."[20] The procedural requirements are intended to "provide notice of the appeal to all litigants who may be directly affected thereby, and to afford them an opportunity to come in and adequately protect their interests in the appellate court."[21] "The determinative question is whether the appeal should be dismissed because sufficient prejudice flows to the unjoined parties to prevent their joinder at this stage of the appeal."[22]

(14) Here, the plaintiffs have not suffered substantial prejudice because they had notice of Hunt's appeal from the outset, an early opportunity to participate in the appeal, and actively opposed becoming a party to the appeal. Hunt's notice of appeal stated that "[t]he parties benefitting from the sanction are plaintiffs-below [the plaintiffs]" and a copy was electronically filed with the plaintiffs' counsel.[23] The notice of appeal was addressed to the attention of the plaintiffs' counsel. The plaintiffs are also listed as appellees in File & Serve's records, and the plaintiffs' counsel is named as a recipient of the briefing schedule letter from this Court.[24] Even

---

[20] *State Pers. Comm'n v. Howard*, 420 A.2d 135, 137 (Del. 1980).
[21] *Id.* at 138.
[22] *Id.*
[23] Dkt. No. 1 (Notice of Appeal); Reply Br. Ex. A.
[24] Dkt. No. 2 (Briefing Schedule); Reply Br. Ex. B; Reply Br. Ex. C.

more to the point, the plaintiffs' counsel responded to Hunt's motion to amend the caption to join the plaintiffs as parties by actively opposing the motion. Despite being named as *beneficiaries* of the sanction in Hunt's notice of appeal, the plaintiffs argued in their opposition that Hunt's "Notice of Appeal names no other party to the appeal and Hunt has not filed a motion to amend his Notice of Appeal. Accordingly, the caption already conforms with Rule 7(c)(8) and there is no basis to add non-parties."[25] And finally, consistent with this Court's precedent, Hunt properly named the Court of Chancery as a party to the appeal.[26]

## Analysis

(15) In *In re Appeal of Infotechnology, Inc.*,[27] this Court reiterated "the fundamental constitutional principle that this Court, alone, has sole and exclusive

---

[25] Dkt. No. 20 (Pls.' November 16, 2020 Letter to the Court). Nominal defendant Quantlab Group, LP, joined in the plaintiffs' opposition to Hunt's motion to amend the caption. Dkt. No. 22 (Quantlab's November 16, 2020 Letter to the Court). This Court deferred judgment on Hunt's motion to amend the caption, but given the above discussion, we now consider it moot.

[26] *See Evans*, 652 A.2d 574, 578 (finding that where the trial court *sua sponte* initiated a collateral proceeding and imposed sanctions, the court was "[t]he real party in interest in the collateral proceeding . . . in its institutional capacity as a judicial tribunal"). *Genesis Healthcare v. Del. Health Res. Bd.*, 130 A.3d 931, 2015 WL 8486195 (Del. Dec. 8, 2015) (TABLE), does not lead to a different result. In *Genesis*, the Delaware Health Resources Board granted a Certificate of Public Review to Eden Hill over the objections of Genesis Health, Eden Hill's competitor. Appeals were taken both to the Superior Court, who affirmed the Board's decision, and then to this Court, naming only the Board as the appellee. As we explained, despite the defects, "Genesis properly invoked the jurisdiction of this Court by filing a timely notice of appeal against the Board." *Id.* at *2; *see also Howard*, 420 A.2d at 138 ("On the contrary, the appellant here has met the jurisdictional requirement imposed by § 148 by filing a notice of appeal within the prescribed period."). We also explained that these situations are "controlled by our holding in *Howard.*" *Genesis Healthcare*, 2015 WL 8486195, at *2 & n.8 ("The *Howard* test is limited to dismissals by the Supreme Court."). Hunt has satisfied the *Howard* test.

[27] 582 A.2d 215 (Del. 1990).

responsibility over all matters affecting governance of the Bar."[28]  We clarified the

line between this Court's jurisdiction and that of the trial courts in disciplinary

matters:

> While we recognize and confirm a trial court's power to ensure the
> orderly and fair administration of justice in matters before it, including
> the conduct of counsel, the [Delaware Lawyers'] Rules [of Professional
> Conduct] may not be applied in extra-disciplinary proceedings solely
> to vindicate the legal profession's concerns in such affairs.  Unless the
> challenged conduct prejudices the fairness of the proceedings, such that
> it adversely affects the fair and efficient administration of justice, only
> this Court has the power and responsibility to govern the Bar, and in
> pursuance of that authority to enforce the Rules for disciplinary
> purposes.[29]

(16)   This Court followed *Infotechnology* in *Crumplar v. Superior Court ex*

*rel. New Castle County*.[30]   In *Crumplar*, the trial judge sanctioned an attorney

$25,000 under Rule 11 for failing to distinguish three cases that were contrary to the

attorney's position in the dispute.  On appeal, we found that the sanction was an

abuse of the trial court's discretion because Crumplar's conduct did not adversely

affect the proceeding's integrity and this Court has "exclusive power to supervise

the practice of law in Delaware and to enforce the Delaware Lawyers' Rules of

Professional Conduct."[31]  We reaffirmed our *Infotechnology* decision, and explained

---

[28] *Id.* at 220.
[29] *Id.* at 216–17.
[30] 56 A.3d 1000 (Del. 2012).
[31] *Id.* at 1009; *see also Infotechnology*, 582 A.2d at 220 ("[T]he General Assembly's adoption of 10 *Del. C.* § 1906, providing for a competent number of persons to be admitted to the Bar by the Supreme Court, and be subject to such disciplinary measures as the Supreme Court in its discretion

9

that "[a]bsent conduct that prejudicially disrupts the proceeding, trial judges have no independent jurisdiction to enforce the Rules of Professional Conduct."[32]  Instead, "[t]rial judges may pursue their concerns in deterring future troublesome conduct by reporting attorneys to the Office of Disciplinary Counsel where the facts merit the referral."[33]  "This extension of *Infotechnology* prevents wasteful, duplicative, and potentially inconsistent enforcement of the Rules of Professional Conduct."[34]

(17)   We also considered what process is required before imposing sanctions under Rule 11.  We concluded that "trial judges should afford the affected party heightened procedural protections when the judges raise Rule 11 on their own motions."[35]  Drawing on Rule 11's language, we found that a "reasonable opportunity to respond" "should include an opportunity for the attorney to present evidence and respond orally before the court imposes sanctions," and "[t]he judge should provide this hearing even if the attorney fails to request it."[36]  We further explained that when the trial judge "anticipates imposing monetary sanctions, the

---

may determine, is merely declaratory of the ancient rule, transplanted to Delaware by the English colonists, that this Court, alone, may establish and govern the Bar.").

[32] *Crumplar*, 56 A.3d at 1009 (citing *Infotechnology*, 582 A.2d at 221).

[33] *Id.* ("The Office of Disciplinary Counsel is well equipped to investigate attorneys and recommend appropriate action.  Referral to the Office of Disciplinary Counsel, an agency of this Court, is consistent with the principle that this Court alone has the inherent and exclusive responsibility for disciplining members of the Delaware Bar.").

[34] *Id.* at 1010.

[35] *Id.* at 1011.

[36] *Id.* at 1011–12.  We held that when one Rule 11 provision permits the opportunity for the attorney to take corrective action, but another does not, then "a personal right to be heard becomes all the more important."  *Id.* at 1012.

10

hearing should include an inquiry into the attorney's ability to pay," and expressly required "that the attorney's ability to pay should be a significant factor in determining the size of the award."[37]

(18)  We agree with Hunt that the court did not provide him with advance notice and an opportunity to be heard before the court levied an almost $15,000 sanction against him.  The plaintiffs' sanction request was taken up by the court without advance notice and addressed at the tail end of the court's ruling on an unrelated motion.  The court's busy schedule did not permit Hunt to be heard at the time of the ruling.  And the court did not inquire into Hunt's ability to pay the substantial sanction amount.

(19)  We are not persuaded by the arguments in support of the court's sanction order.  First, the argument is made that notice and an opportunity to be heard are limited to Rule 11 sanctions.  We disagree.  The procedural notice and hearing requirements are not dependent on the distinction between rule-based sanctions and those invoking the court's inherent power.[38]  Second, Hunt supposedly

---

[37] *Id.* at 1012.

[38] *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) ("A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees[.]"); *Johnson v. Cherry*, 422 F.3d 540, 551 (7th Cir. 2005) (stating that the requirements of notice of the court's intent to levy sanctions and an opportunity to be heard apply "whether the court is sanctioning a party pursuant to its authority under Rule 11, section 1927, or its inherent authority"); *Simmerman v. Corino*, 27 F.3d 58, 64 (3d Cir. 1994) ("Likewise, this court repeatedly has held in both inherent power and Rule 11 sanctions cases that, [i]n the absence of extraordinary circumstances, procedural due process requires notice and an opportunity to be heard before any governmental deprivation of a

had notice of possible sanctions from the plaintiff's May 12 letter requesting *pro hac vice* revocation and other unspecified sanctions. But when important rights are at stake, attorneys subject to sanctions are entitled to clear advance notice that a sanctions request will be addressed at an upcoming hearing. They must also be given an opportunity to be heard at the sanctions hearing. If a sanction amount exceeding a nominal amount is going to be imposed, the court must inquire into the ability to pay before imposing a monetary sanction. That did not happen here.

(20) The plaintiffs' May 12 letter to the court focused on *pro hac vice* revocation and did not provide the required notice *from the court* that it would take up the sanctions motion at an unrelated hearing. The vague reference in the May 12 letter to "other sanctions" was not a substitute for advance notice *from the court* that a substantial financial sanction was in the offing at the hearing.[39]

---

property interest.") (alteration in original) (quoting *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 570 (3d Cir. 1985)).

[39] *See, e.g.*, *Lai v. Wei*, 331 Fed. App'x 143, 146 (3d Cir. 2009) ("Prior to imposing a monetary penalty sua sponte, a District Court should give the litigant notice of the possible sanction. Although Lai had notice of the possibility of a filing injunction and an award of attorneys [sic] fees (relief expressly sought by defendants), the Court sua sponte imposed without specific notice a monetary penalty payable to the Court."); *Ali v. Mukasey*, 277 Fed. App'x 741, 742 (9th Cir. 2008) ("In the absence of extraordinary circumstances, the imposition of a monetary sanction for a violation of a local rule without notice and an opportunity to be heard is a violation of the Due Process Clause."); *see also Gagliardi v. McWilliams*, 834 F.2d 81, 83 (3d Cir. 1987) (vacating injunction sanction where the "[movants] in their motion for dismissal and Rule 11 sanctions sought only attorney's fees and 'other appropriate relief which the court deems just and proper'" because "[t]he general request for 'other appropriate relief' was insufficient notice"); *Crumplar*, 56 A.3d at 1011–12 (finding that under Rule 11 a "'reasonable opportunity to respond' . . . should include an opportunity for the attorney to present evidence and respond orally before a court imposes sanctions").

## Administration of Justice

(21) We also believe that Hunt's one unprofessional email to opposing counsel did not, without more, affect the administration of justice. As explained earlier, "this Court, alone, has sole and exclusive responsibility over all matters affecting governance of the Bar."[40] For a judge to sanction an attorney under the Delaware Lawyers' Rules of Professional Conduct, the conduct must "affect[] the fair and efficient administration of justice[.]"[41] Otherwise, "trial judges have no independent jurisdiction to enforce the Rules of Professional Conduct."[42] Following this path prevents the "wasteful, duplicative, and potentially inconsistent enforcement of the Rules of Professional Conduct."[43] Instead of levying sanctions, "[t]rial judges may pursue their concerns in deterring future troublesome conduct by reporting attorneys to the Office of Disciplinary Counsel where the facts merit the referral."[44]

(22) Our decision in *In re Hurley* is instructive.[45] There, Delaware attorney Joseph Hurley sent "disparaging and demeaning" emails to attorneys at the Department of Justice.[46] We held that, "without question, the charged misconduct

---

[40] *Infotechnology*, 582 A.2d at 220.
[41] *Crumplar*, 56 A.3d at 1010 (quoting *Infotechnology*, 582 A.3d at 216–17).
[42] *Id.* at 1009.
[43] *Id.* at 1010.
[44] *Id.* at 1009.
[45] 183 A.3d 703, 2018 WL 1319010 (Del. 2018) (TABLE).
[46] *Id.* at *2.

violated Rule 4.4(a) because the offensive portions . . . had 'no substantial purpose other than to embarrass, delay or burden' opposing counsel."[47] But the same conduct was not prejudicial to the administration of justice under Rule 8.4(d). Hurley's "demeaning correspondence" "was only sent to [other lawyers] and was not copied to the court" and "the correspondence was private and had no effect on any case and thus had no 'direct impact on the administration of justice' because it did not burden the court."[48] In other words, "the evidence did not clearly show that the letters, as offensive and inappropriate as they were, had an actual impact on the administration of justice."[49]

(23) Here, we have the same lack of clear evidence showing that the offensive email had an impact on the administration of justice. Admittedly, the court had to use its valuable time to address the sanctions request. In some circumstances, using judicial resources to decide a sanctions motion might fall within the court's inherent powers and may prejudice the administration of justice.[50] But the mere fact

---

[47] *Id.* at *3 (quoting DEL. LAWYERS' RULES OF PROF'L CONDUCT R. 4.4(a)).

[48] *Id.* at *2.

[49] *Id.* at *3.

[50] *See, e.g., In re Murray*, 47 A.3d 972, 2012 WL 2324172, at *26 (Del. June 18, 2012) (TABLE) ("The Respondent wasted judicial resources in continuing to request to withdraw from the appointments, where the Respondent knew the Family Court could appoint him under the Rules; where the Respondent felt his motions to withdraw were futile; and, once the Court denied his requests, where the Respondent continued to press the issue with the Court through less-than-subtle form letters . . . and by failing to obtain substitute counsel, or even contact the two attorneys whose names were provided by the Court for just that purpose."); *In re Abbott*, 925 A.2d 482, 486–87 (Del. 2007) ("Thus, the Respondent caused a waste of judicial resources that otherwise would be devoted to the merits of other cases before the Superior Court. This Court has previously held that disruptive conduct was prejudicial to the administration of justice."); *In re Mekler*, 669

14

that a court must address a sanctions motion does not lead automatically to the conclusion that the attorney's conduct interfered with the administration of justice. Otherwise, every request for sanctions in litigation grounded in an ethical violation would invoke the court's jurisdiction.[51]  Further, we agree that a real threat of physical violence in direct response to proceedings before the court can prejudice the administration of justice because it is intended to prevent opposing counsel from making legitimate legal arguments due to fear of violence.  The email here, however, was more angry, insulting, and false bravado than a real threat of physical violence. The unprofessional conduct was also not repetitive and did not affect the proceedings before the court.

(24)  We stress that nothing in our ruling suggests that Hunt's behavior met the high ethical standards expected of counsel admitted *pro hac vice* in Delaware. Equally important, as we recognized in *Infotechnology*, "trial courts retain their traditional powers, which are indeed potent, to address, rectify and punish conduct

---

A.2d 655, 667 (Del. 1995) ("Twice failing to appear before a tribunal at the appropriate time is clearly unprofessional.  In a given case, it could be found to be a violation of DLRPC 8.4(d) since such conduct can be disruptive and a waste of the court's time and resources.").

[51] In *In re Abbott*, 925 A.2d 482 (Del. 2007), this Court reversed the Board of Professional Responsibility's decision that offensive language in briefs did not violate Rule 8.4(d).  We found that the lawyer's behavior went "beyond being *merely* unprofessional" where the lawyer made personal attacks against opposing counsel and questioned the court's impartiality.  *Id.* at 484 (emphasis in original).  We specifically found that this conduct violated Rule 8.4(d) because the Superior Court, "in response to [Abbott]'s use of offensive and sarcastic language, was required to strike *sua sponte* portions of [Abbott]'s written arguments and to write an opinion explaining its actions."  *Id.* at 486.

of a party or counsel which threatens the legitimacy of judicial proceedings."[52] "Any abuses for mere tactical gain should, and must, be addressed by the trial court" who "has full power to employ the substantive and procedural remedies available to properly control the parties and counsel before it, and to ensure the fairness of the proceedings."[53]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Court of Chancery is reversed.

---

[52] *Infotechnology*, 582 A.2d at 221–22.

[53] *Id.* at 221; *see also Anderson v. State*, 21 A.3d 52, 62 (Del. 2011) ("Rule 11 sanctions are appropriate to deter and punish the bringing of frivolous or meritless claims."); *Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 508 (Del. 2005) ("For future guidance and deterrence, we emphasize that sanctions may be imposed upon anyone participating in a Delaware proceeding who engages in abusive litigation tactics.").