COURT OF CHANCERY
OF THE
STATE OF DELAWARE

SELENA E MOLINA
MASTER IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Final Report: June 30, 2022
Date Submitted: March 8, 2022

<u>*Via File & ServeXpress*</u>
Richard L. Abbott, Esquire
724 Yorklyn Road, Suite 240
Hockessin, DE  19707

<u>*Via U.S. Mail*</u>
Patricia I. McCune
P.O. Box 1098
Middletown, DE  19701

Re:     ***IMO the Estate of Felix A. Rutkoske,***
          Register of Wills Folio No. 169494

Dear Parties & Counsel:

This final report addresses the second set of exceptions filed by a beneficiary

of the estate of Felix A. Rutkoske.  I find the exceptions should be overruled and

dismissed; most are time-barred, and others fail on their merits.  I further recommend

the final accounting be approved and this estate closed.

## I.     Background

Felix A. Rutkoske (the "Decedent")—not to be confused with Felix J. (the

Decedent's father), Felix Jr. (the Decedent's son), and Felix III (the Decedent's

grandson)—died on April 26, 2018.[1]  He was survived by his four children, Mark A.

Rutkoske, Felix Rutkoske Jr., Susan R. Couch (the "Executrix"), and Patricia I.

---

[1] Docket Item ("D.I.") 2; D.I. 12.

McCune (the "Exceptant").[2]   The Decedent also left behind a last will and testament

dated March 31, 2015 (the "Will").[3]   The Will nominated the Executrix to her role,

bequeathed $15,000.00 to the Exceptant, and left the residuary and the Decedent's

interest in certain real property to his other three children.[4]   Regarding his personal

property, the Decedent directed that his four children could select the items they

want, and "[a]ny item/s not selected or in dispute shall be liquidated and the net

proceeds therefrom shall be considered as part of [his] residuary estate."[5]

The Executrix was appointed to her role on May 15, 2018.[6]   She filed an

initial inventory on August 14, 2018,[7] and a first accounting on May 8, 2019.[8]  But

her filings were quickly challenged.   The Exceptant filed exceptions, raising

concerns about the estate administration, on or about May 15, 2019 (the "First

Exceptions").[9] The Executrix responded, attempting to address and resolve the First

Exceptions through an amended accounting and inventory (as amended the "First

---

[2] D.I. 5.
[3] D.I. 1.
[4] *Id.*, Item II, IV.
[5] *Id.*, Item III.
[6] D.I. 5.
[7] D.I. 7.
[8] D.I. 9.
[9] D.I. 10-12.

Accounting" and the "Inventory"), on or about June 12, 2019.[10]  But the filings did not resolve the Exceptant's concerns, she continued to take exception to the First Accounting and the Inventory, and, therefore, the First Exceptions were assigned to me for resolution.[11] I quickly referred the parties to mandatory mediation, but unfortunately, mediation was unsuccessful.[12]

With the parties unable to resolve their disputes, I scheduled an evidentiary hearing for December 21, 2020 (the "Hearing").[13]  On November 4, 2020, I wrote to the parties expressing my concerns about proceeding with an in-person hearing during the COVID-19 pandemic.[14]   I provided two options—Zoom or postponement—and invited comments.  In a letter dated November 12, 2020, the Exceptant answered my invitation, raising concerns about proceeding on Zoom, noting her age and lack of equipment and resources.[15]   But I overruled the Exceptant's objections and found, instead, that the Hearing should be converted to Zoom.[16]   A remote proceeding, I found, was the best way to reach a prompt

---

[10] D.I. 18-20. The Inventory was refiled in December 2020 "to correct deficiency of signatory and notarial seal only on Page 7." D.I. 36.
[11] *See* D.I. 21-22.
[12] D.I. 23-24, 26.
[13] D.I. 29.
[14] D.I. 33.
[15] D.I. 34.
[16] D.I. 35.

resolution of the dispute. All parties were informed of my decision and provided instructions on using the Zoom platform.[17] No one filed exceptions or any response to this conversion.

Rather, all parties appeared on the Zoom platform for the Hearing.[18] The Exceptant appeared by audio only, dialing in from her phone.[19] I began the Hearing by providing instructions on the Court's expectations for Zoom proceedings, advising the parties on how the Hearing would proceed procedurally, and issuing a preliminary oral ruling.[20] In my oral ruling, I explained that some of the Exceptant's challenges were outside the scope of proper exceptions and should be dismissed.[21] I also addressed the Exceptant's question about whether the Executrix should be penalized for filing multiple inventories and ruled that there was no basis for such a penalty.[22]

With these matters out of the way, the Hearing focused on two buckets of remaining exceptions: (1) exceptions to the Inventory and (2) exceptions to how the

---

[17] *Id.*
[18] *See* D.I. 43 ("Tr.") 2.
[19] *See* Tr. 5:23-6:4.
[20] *See* Tr. 3-10.
[21] Tr. 7:2-10:14, 18:16-19:1 (addressing challenges to the estate of Irene Rutkoske, the Will, and activities undertaken by the Exceptant's brothers).
[22] *See* Tr. 15:4-12.

estate was administered.[23]  The Executrix and the Exceptant both testified and were subject to cross-examination. Although the Exceptant noted her trepidation, at no time did she express any concerns about proceeding remotely, nor voice any objections to the proceeding.[24] At the conclusion of the Hearing, I issued an oral final report, finding the First Exceptions should be overruled and dismissed in full.[25]

The Exceptant filed exceptions to my oral ruling on December 31, 2020.[26] Those exceptions were assigned to and dismissed by Vice Chancellor Slights because the Exceptant failed to comply with Court of Chancery Rule 144.[27]  Any appeal from Vice Chancellor Slights' ruling needed to be noticed by April 14, 2021; no such appeal has been filed.[28]

With Vice Chancellor Slights' uncontested ruling, probate was nearly complete.  All that remained was for the Executrix to submit a revised final

---

[23] *See* Tr. 8:17-10:6 (explaining buckets).
[24] *See* Tr. 5:23-6:4 (explaining she "was a little frightened" but was participating and "if anything comes up, [would] be happy to explain [her] concern").
[25] Tr. 69:1-73:19.
[26] D.I. 41.
[27] *See* D.I. 47, 50. Vice Chancellor Slights issued two orders.  His first order dismissed the exceptions for the Exceptant's failure to file an opening briefing under Court of Chancery Rule 144(d)(1).  D.I. 47. After the Exceptant filed an untimely opening brief, Vice Chancellor Slights issued a second order finding the untimely filing did not provide sufficient justification to vacate his earlier dismissal, nor a basis on which to reargue that dismissal. D.I. 50.
[28] Supr. Ct. R. 6(a)(i).

accounting to address any additional assets or expenses discovered or incurred after the First Accounting. The Executrix submitted the revised final accounting on June 16, 2021 (the "Final Accounting").[29] On November 24, 2021, the Exceptant filed exceptions to the Final Accounting (the "Second Exceptions").[30] The Executrix responded on December 21, 2021.[31]

Through the Second Exceptions and the response thereto, I learned a bit about what happened after the Hearing and Vice Chancellor Slights' affirmance. Although the parties all agreed at the Hearing that the Exceptant could inherit the Decedent's Impala (the "Vehicle"),[32] the Exceptant represented in the Second Exceptions that she still did not have possession of the Vehicle. But, as the Exceptant conceded, she was "told [she] can pick it up."[33] The Executrix confirmed as much, explaining that she transferred title of the Vehicle to the Exceptant, after "expensive and extensive

---

[29] D.I. 56.

[30] D.I. 52. The Exceptant addressed her Second Exceptions to former-Chancellor Bouchard, who retired before such filing, and explained she was "writing to file an Exception on the above case as well as a formal complaint." *Id.* I am issuing this final report because I am the judicial officer assigned to this matter; the Exceptant may elevate her concerns by timely filing exceptions hereto under Court of Chancery Rule 144.

[31] D.I. 54.

[32] *See* Tr. 36:13-37:12.

[33] D.I. 52.

repairs and maintenance service" were performed at the Executrix's personal expense.[34]

But the Vehicle was not the Exceptant's only concern. The Exceptant also raised concerns about fees billed to the estate. She expressed that she did not have sufficient information regarding any commission claimed by the Executrix or fees billed by the Executrix's counsel. The Exceptant also reiterated some of her First Exceptions; she raised, again, her concern about the penalty for returned inventories and a charge on the original inventory that was removed, as amended, in the Inventory. She also raised concerns about communications between her and the Executrix in 2018 that the Exceptant contends show the Executrix was not "acting with fiduciary responsibility."[35] And, finally, the Exceptant raised concerns about how the Hearing was conducted.[36]

---

[34] *See* D.I. 54 (emphasis removed). The Exceptant submitted emails showing her communications with the Executrix about the Vehicle. D.I. 52. Through those emails, the Exceptant raised concerns about how the Executrix handled the transfer and whether any fees would be assessed. *Id.* Disagreements aside, the emails reflect that the Executrix was ready, willing, and able to effectuate the transfer and it appeared there was an agreement that the Exceptant would pick up the Vehicle on Monday, November 29, 2021. *Id.* I can surmise this did not occur, but I see no basis to fault to Executrix.

[35] D.I. 52.

[36] The Exceptant alleges violations of her "Civil Rights, [her] Constitutional Rights and (Delaware's Judicial Guidelines for Civil Hearings Involving Self-Represented Litigants . . . Principles of Professionalism for Delaware Lawyers, The Delaware Lawyers' Rules of Professional Conduct, Delaware Lawyers' Rules of Disciplinary Procedure and Court of Chancery of the State of Delaware Standing Order No. 5, Extension of Standing Order No.

I took the Second Exceptions under advisement on March 8, 2022.[37]

## II. Analysis

The Second Exceptions can be grouped into four categories of exceptions about (1) the Inventory, (2) the Hearing, (3) the Vehicle, and (4) attorneys' fees. As explained below, exception (1) was fully addressed in connection with the First Exceptions, exception (2) is barred by the Exceptant's failure to timely raise it before Vice Chancellor Slights, and exceptions (3)-(4), although "new," fail on their merits.[38] I address these exceptions in turn.

### 1. The exceptions to the Inventory should be overruled and dismissed.

Under 12 *Del. C.* § 2301(a) "[e]very executor or administrator shall render an account of their administration to the Court of Chancery, in money, every year from

---

4 Concerning COVID-19 Precautionary Measures." *Id.* The Exceptant failed to explain what civil or constitutional rights she believes were violated and, without such, I cannot address those concerns. I find I also cannot address her concerns about the Principles of Professionalism, Rules of Professional Conduct, or Rules of Disciplinary Procedure because this Court does not have jurisdiction to do so. *See Appeal of Infotechnology, Inc.*, 582 A.2d 215, 220 (Del. 1990) ("In Delaware there is the fundamental constitutional principle that this Court, alone, has sole and exclusive responsibility over all matters affecting governance of the Bar."). And the reference to the standing order appears to be a belated objection to proceeding via Zoom; it comes far too late and will not be addressed further. That leaves the guidelines, which I address in footnote 43, *infra*.

[37] D.I. 55.

[38] The Executrix argued the Exceptant no longer has standing to file exceptions because the Exceptant has already received her $15,000.00 bequest and is no longer entitled to any inheritance. D.I. 54 ¶ 7. I disagree. The Exceptant's interest in the estate was not so limited given the personal property protocol. *See* D.I. 1, Item III.

the date of their letters until the estate is closed and a final account passed by the Court." Each account "shall be accompanied by a statement of the names and mailing addresses of each beneficiary entitled to share in the distribution of the estate."[39] Beneficiaries then receive notice of the account from the Register of Wills and can inspect and file exceptions to it within three (3) months.[40]

The Exceptant timely invoked her right to file exceptions to the First Accounting and the Inventory. Her First Exceptions were sent to mediation and, after mediation failed, heard at the Hearing. Any exceptions that were, or could have been, raised in response to the First Accounting and the Inventory are time-barred and cannot be raised now as exceptions to the Final Accounting.[41]

Based on the Second Exceptions, Exceptant attempts to take a second (or third) bite at the Inventory. The Exceptant attempts to revisit the original filing, both to contest a specific line item and argue that the Executrix should have been penalized for returned inventories. Neither argument has merit. The alleged overcharge was removed in the Inventory, and I held, at the Hearing, that there was no basis for a penalty.[42] To the extent the Exceptant wanted to contest my ruling,

---

[39] 12 *Del. C.* § 2302(a).
[40] 12 *Del. C.* § 2302(b), (d).
[41] *See In re Chambers*, 2020 WL 3173032, *4 (Del. Ch. June 12, 2020).
[42] *Compare* D.I. 7 *with* D.I. 36; Tr. 15:4-12.

she needed—and failed—to comply with the exception process under Court of Chancery Rule 144. These exceptions should be overruled and dismissed.

### 2. The exceptions to the Hearing should be overruled and dismissed.

I issued my oral ruling on December 21, 2020. The Exceptant took advantage of the exception process under Court of Chancery Rule 144, but she failed to comply with the briefing requirements and her exceptions were dismissed by Vice Chancellor Slights. If the Exceptant wished to contest that dismissal, she needed to comply with the Delaware Supreme Court Rules regarding noticing an appeal from Vice Chancellor Slights' orders. And, if the Exceptant believed the Hearing was not conducted properly, she could have, and should have, raised those concerns through her exceptions to my oral ruling; she failed to do so and is time-barred from bringing such claims now.[43]

---

[43] *See* Ct. Ch. R. 144(d)(1). Although I find these claims fail procedurally, I take the Exceptant's allegations and concerns seriously and herein address their merit. The Exceptant argues that she was not provided a full and fair opportunity to address the Court through the remote proceeding. She specifically raises concerns about my dismissal of her challenges to a new entry of appearance and my failure to provide guidance to her throughout the Hearing. I find the Exceptant was provided every opportunity to participate fully in the Hearing. At various times during the Hearing, I paused to ensure she was able to follow along and inquired whether she had any concerns. *See, e.g.*, Tr. 10:18-19, 24:15-24, 45:10-14, 46:12-47:1, 70:24-71:3, 73:23-24. At no time did the Exceptant raise any concerns about her ability to fully participate. *Cf.* Tr. 66:4-7. Regarding the entry of counsel, the Exceptant merely noted at the Hearing that she "was not aware that he would be attending today." Tr. 25:5-6. She did not lodge any formal or informal objection, nor seek any relief. But even if she had, the Exceptant had no basis on which to challenge

>   **3.   The new exceptions regarding the Vehicle and attorneys' fees should be overruled and dismissed.**

The Exceptant's remaining exceptions relate to the Vehicle and attorneys' fees.[44]   Regarding the Vehicle, evidence at the Hearing demonstrated that the Executrix paid for the repairs and maintenance and was ready, willing, and able to transfer title to the Exceptant.   After the Hearing, the Executrix followed through— she transferred title to the Exceptant.   That the Exceptant does not have physical possession of the Vehicle appears to be an issue of her own making. I find the Executrix took reasonable steps to effectuate the transfer and nothing further is required; this exception should be overruled and dismissed.

Regarding attorneys' fees, the Exceptant represents "I <u>do not</u> know what amounts of money have been paid to Mr. Abbott."[45]   Such is the entirety of her exception—alleged lack of knowledge or information.   But the Final Accounting

---

counsel's entry and any prejudice that may have inured from a late entry never came to fruition—the new counsel did not present any argument or evidence at the Hearing.

   The Exceptant also raised concerns about my compliance with the Judicial Guidelines for Civil Hearings Involving Self-Represented Litigants (the "Guidelines"). Although not binding, I am familiar with the Guidelines, respect their purpose, and am confident that I embodied the spirit of the Guidelines at the Hearing.

   Thus, although I find these exceptions are time-barred, I also find they should be overruled and dismissed on their merits.

[44] The Exceptant also questioned whether any fees or commissions were paid to the Executrix; none were. *See* D.I. 56.

[45] D.I. 52 (emphasis in original).

clearly reflects that Abbott Law Firm was paid $8,644.58 for legal services.[46] And, despite this disclosure, the Exceptant has not raised any objections to the amount of such fees. Had she done so, the Executrix would have borne "the burden of proving the attorneys' fees and expenses were relevant, reasonable, and timely."[47] But, again, the Exceptant made no such challenge. I find the fees were adequately disclosed on the Final Accounting and the exception contesting lack of disclosure or information should be overruled and dismissed.[48]

### III.    Conclusion

At the Hearing, the Executrix testified that contentious litigation, including estate-related litigation, plagued the Decedent until the day he died.[49] The Decedent was "very bitter" about that litigation and, per the Executrix, wanted the Exceptant

---

[46] D.I. 56. Initially, I can appreciate the Exceptant's confusion; there are no attorneys' fees disclosed on the section of the Final Accounting calling for "Attorney's fees." D.I. 56 p.3. But that confusion is easily resolved when one reviews the identified "Administrative Expenses." *Id.* p.2. Therein, Mr. Abbott's fees are adequately disclosed. I find no harm or prejudice from the decision to list fees in that section of the form, rather than the other.

[47] *In re Chambers*, 2020 WL 3173032, at *3 (citing *In re Rich*, 2013 WL 5966273, at *4 (Del. Ch. Oct. 29, 2013)).

[48] I further note the fees appear reasonable. Mr. Abbott has been representing the Executrix since at least August of 2020, filed multiple responses requiring detailed factual and legal analysis, and participated in the Hearing. *See, e.g.*, D.I. 30, 37, 46. The fees appear modest in comparison to the work required. Further, the fees represent less than ten (10) percent of the probate assets. *See* D.I. 56 (disclosing total probate assets of $127,594.10 and attorneys' fees of $8,644.58)

[49] *See, e.g.*, Tr. 28:4-7.

to continue to fight on his behalf.[50]  But the time for fighting about this estate is over. Many of the Exceptant's claims have already been heard or are barred by the Exceptant's failure to raise them timely.  The rest fail on their merits.  Now is the time for the Decedent's estate to be—finally—closed.  For the above reasons, I recommend that the Second Exceptions be overruled and dismissed in their entirety. I further recommend the Final Accounting be approved and this estate closed.

This is a final report and exceptions may be filed under Court of Chancery Rule 144.

Respectfully,

*/s/ Selena E. Molina*

Master in Chancery

---

[50] Tr. 29:8-12.